**Michael C. FRANCIS, petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**Nos. A05–190, A06–940.**

Supreme Court of Minnesota.

April 5, 2007.

John Stuart, State Public Defender, Ann McCaughan, Assistant Public Defender, Minneapolis, MN, for Appellant.

Michael C. Francis, Bayport MN, Appellant Pro Se.

Mike Hatch, Attorney General, St. Paul MN; and Michael Richardson, Assistant Hennepin County Attorney, Minneapolis MN, for Respondent.

## OPINION

ANDERSON, RUSSELL A., Chief Justice.

Appellant Michael C. Francis was convicted and sentenced in Hennepin County District Court for the crimes of first-degree premeditated murder for the death of Pamela Ragland and attempted first-degree premeditated murder for the injury of Marvin Pate. On appeal, Francis claims that the evidence was insufficient to support the convictions and that he was deprived of a fair trial. We affirm.

On May 24, 2004, at approximately 10:50 p.m., Marvin Pate and his girlfriend, Pamela Ragland, were sitting in Ragland's car which had been parked on the east side of the 3300 block of Portland Avenue, a one way southbound street in South Minneapolis. Pate got out of the car and was standing by the open front passenger door, talking to Ragland, who was in the driver's seat. He noticed a blue Chevrolet Tahoe approach from the north and watched as it stopped in front of him. He looked at the Tahoe, trying to see who was driving, and saw Francis in the driver's seat. Pate then saw Francis, who was 3 or 4 feet away from Pate, raise a gun and begin firing. Pate realized he had been shot, tried to grab the door, and fell to the ground, first to his knees and then face down. As Pate lay on the ground, he saw the Tahoe, with specialty tire rims and exhaust pipes, speeding away.

Law enforcement officers and medical responders arrived within minutes. When asked who shot him, Pate replied, "It was a blue truck." In the ambulance en route to the hospital, when again asked who shot him, Pate said that it was "Mike." Pate had been shot in the hip, abdomen, and back, and underwent emergency surgery. Ragland was shot once in the head and died a few hours later. In police interviews at the hospital and later at his home, Pate said that "Mike" shot him, that Mike drove a blue Tahoe with specialty rims, that he and Mike had argued over those rims sometime in February of 2004, and that Mike had threatened him. Pate gave police a physical description of Mike and later identified appellant Michael Francis as the shooter from a photographic lineup.

During the investigation, the police received a date- and time-stamped videotape from a private surveillance company with a camera trained on the intersection of 31st Street and Portland Avenue. The tape showed an image of a blue Tahoe turning from 31st onto Portland shortly before the shooting. The police obtained the license plate number for a blue Tahoe that matched the description given by Pate. The Tahoe was registered to the mother of Francis's girlfriend who lived relatively close to the area of the shooting. The vehicle was subsequently stopped, towed, and searched pursuant to a warrant. Francis was driving the vehicle when it was stopped.

Francis was indicted by grand jury for first-degree premeditated murder, Minn. Stat. § 609.185(a)(1) (2006); first-degree intentional drive-by shooting murder, Minn.Stat. § 609.185(a)(3) (2006); attempted first-degree premeditated murder,

Minn.Stat. § 609.17, subd. 1 (2006); and attempted first-degree intentional drive-by shooting murder, Minn.Stat. § 609.17, subd. 1 (2006). At trial, in addition to the evidence of Pate's identification of Francis as the shooter, the state presented evidence of Francis's cell phone records which showed frequent use in the hour before the shooting, a 15–minute gap around the time of the shooting, and then the resumption of cell-phone use. The records also indicated that calls placed from Francis's cell phone shortly before the 15–minute gap were processed through the cell-site tower located within the general area of the shooting. A Portland Avenue resident testified that after hearing gunshots on May 24, 2004, he saw an SUV with a blue glow on the dashboard pass by his home. On examination at the forensic garage, Francis's Tahoe was found to have an aftermarket stereo system that would emit a blue light. Forensic evidence indicated that the victims were shot with a .44–caliber revolver, "one of the bigger caliber handguns."

Francis testified on his own behalf and denied shooting either Pate or Ragland. Although he could not recall exactly what he was doing on the evening of May 24, 2004, he testified that his "routine" between 9:00 p.m. and 11:00 p.m. on a school night was to pick up his girlfriend at her mother's home in South Minneapolis and drive with her to his home in St. Louis Park or to meet her in St. Louis Park. He denied threatening Pate and said that the argument over tire rims "never took place." He had no idea why Pate would identify him as the shooter. Francis also elicited testimony from an auto mechanic familiar with his Tahoe to cast doubt on

evidence that his vehicle was involved in the shooting.

The jury found Francis guilty as charged. He was sentenced to 180 months for the attempted first-degree premeditated murder of Pate and a consecutive mandatory life term for the first-degree premeditated murder of Ragland. Proceeding pro se on appeal,[1] Francis argues that the identification evidence was insufficient to support the verdicts and that he was deprived of a fair trial by prosecutorial misconduct, evidentiary errors, incomplete jury instructions, lack of effective assistance of counsel, and other improprieties at trial. He also asserts the improper denial of an evidentiary hearing on his postconviction claims.

### I.

Francis contends that the evidence was insufficient to support the jury's verdicts. In reviewing a challenge to the sufficiency of the evidence, "[o]ur responsibility extends no further than to make a painstaking review of the record to determine whether the evidence, direct and circumstantial, viewed most favorably to support a finding of guilt is sufficient to permit the jury to reach that conclusion." *State v. Ellingson,* 283 Minn. 208, 211, 167 N.W.2d 55, 57 (1969).

Francis initially argues that the victim's identification of him as the shooter was uncorroborated and unreliable. Assessing the credibility of a witness and the weight to be given a witness's testimony is exclusively the province of the jury. *State v. Bliss,* 457 N.W.2d 385, 390 (Minn.1990). Here there was legally sufficient evidence

---

1. After a brief was filed by Francis's appellate attorney, Francis discharged his attorney. We granted his request to proceed pro se and stay the appeal to allow him to institute postconviction proceedings. Following the completion of those proceedings, Francis filed a notice of appeal from the order denying postconviction relief. We vacated the stay and consolidated the appeals.

of identity, including the victim's testimony, the surveillance videotape, cell phone records, and evidence of animosity. Francis also contends that the evidence was insufficient to establish premeditation and intent to kill Ragland, apparently challenging the application of transferred intent to first-degree premeditated murder. But "[p]remeditation will transfer with intent if the perpetrator premeditated the murder of an intended victim but accidentally killed an unintended victim." *State v. Hall*, 722 N.W.2d 472, 477 (Minn.2006).

## II.

■ *Prosecutorial Misconduct.* Francis contends that he is entitled to a new trial because the prosecutor engaged in serious misconduct at trial. As a general rule, we reverse only if the misconduct, when considered in light of the whole trial, impaired the defendant's right to a fair trial. *State v. Swanson*, 707 N.W.2d 645, 658 (Minn.2006).

■ Francis initially claims that the prosecutor elicited inadmissible evidence. On direct examination, the chief investigating officer made reference to receiving help from a gang-unit officer and to the retrieval of Francis's photograph from a computer-system's arrest records. It is improper for a prosecutor to ask questions that are calculated to elicit or insinuate an inadmissible and highly prejudicial answer. *State v. Henderson*, 620 N.W.2d 688, 702 (Minn.2001). The prosecutor has a duty to brief the state's witnesses to avoid referring to inadmissible evidence. *See State v. Ray*, 659 N.W.2d 736, 745 (Minn.2003). The district court found the elicitation of the objectionable comments inadvertent and provided curative instructions to the jury.

■ Francis asserts that the prosecutor improperly cross-examined a witness for the defense. On cross-examination of a defense character witness who had testified about Francis's character as non-violent, the prosecutor inquired into specific acts of violence. When the defense introduces evidence of good character, on cross-examination the prosecutor may inquire "into relevant specific instances of conduct." Minn. R. Evid. 405(a). The purpose of allowing inquiry into specific acts on cross-examination is to test the knowledge and credibility of the witness. *U.S. v. Monteleone*, 77 F.3d 1086, 1089 (8th Cir.1996). In cross-examination under Rule 405, "the whole process must be carefully regulated," including careful limiting instructions "as to the limited purposes for which any cross-examination of defense character witnesses is permitted," as well as the denial of

> inquiry into past incidents under [Rule 403] if probative value seems substantially outweighed by the risk of unfair prejudice—by the risk, for example, that the jury will draw the one forbidden inference that the incidents prove propensity, hence behavior in the case at hand, rather than taking them as affecting the weight to be accorded to the testimony of the character witness.

1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 121 (2d ed.1994). Here, the district court confined the prosecutor's cross-examination of the defense character witness to the scope of the direct examination and also provided limiting instructions to the jury.

■ Francis also claims that the prosecutor engaged in misconduct in closing argument by referring to Francis's drug dealing and disparaging his character. In reviewing claims of prosecutorial misconduct in closing argument, we consider the closing argument as a whole. *State v. Powers*, 654 N.W.2d 667, 678–79 (Minn.2003). Although the prosecutor

made repeated reference to drug dealing in her closing argument, her remarks were based on Francis's testimony. During direct examination, Francis testified that he earned a living selling marijuana from the time he awoke in the morning "all the way to between nine and eleven." He said he conducted his business through use of his cell phone and driving to meet somebody "somewhere, maybe in south Minneapolis."

 The prosecutor, however, also stated:

> He's a small man that maybe needs a big truck with some expensive, shiny rims on it to make him feel like a big man and who needs a gun in his hand to make him feel like the big man that he's not, * * * he's a person that thinks he's smart, that thinks he can outwit the system, outwit the police, that even if he gets caught with drugs he's going to get out of it by just taking some of his big money he makes and paying a lawyer five grand and walking away from it. * * * That's the kind of arrogance he showed you on the witness stand.

Gratuitous character attacks are improper during closing argument. *Ture v. State,* 681 N.W.2d 9, 19–20 (Minn.2004). While these comments were likely improper, in considering the argument as a whole, they were not so unduly prejudicial as to deprive Francis of the right to a fair trial.

 *Evidentiary Issues.* Francis claims a new trial is necessary because of evidentiary errors. We review the district court's evidentiary rulings for an abuse of discretion. *State v. Gutierrez,* 667 N.W.2d 426, 436 (Minn.2003). A new trial "is warranted only when the error substantially influences the jury's decision." *State v. DeShay,* 669 N.W.2d 878, 888 (Minn.2003) (internal citation omitted).

 Francis challenges the admission of his cell phone records and the surveil-

lance videotape as unreliable and therefore irrelevant. Evidence is relevant if it logically tends to prove or disprove a material fact. Minn. R. Evid. 401. The admission of this evidence was based upon sufficient foundation and relevant to identity. It was for the jury to determine both the weight and the credibility of this evidence. *See State v. Daniels,* 361 N.W.2d 819, 826 (Minn.1985).

 Francis also asserts error in the admission of testimony of a witness who had been diagnosed with "bipolar schizophrenia." "Every person of sufficient understanding, including a party, may testify in any action or proceeding, civil or criminal, in court or before any person who has authority to receive evidence," except that "[p]ersons of unsound mind and persons intoxicated at the time of their production for examination are not competent witnesses if they lack capacity to remember or to relate truthfully facts respecting which they are examined." Minn.Stat. § 595.02, subd. 1(f) (2006). Here, the witness's illness and response to medication were thoroughly explored by defense counsel on cross-examination and the record reflects that the witness was plainly competent to testify.

 Francis asserts error in the exclusion of his proffered evidence of an alternative perpetrator. Alternative perpetrator evidence is inadmissible absent some evidence having an inherent tendency to connect the alternative perpetrator with the crime. *See State v. Jones,* 678 N.W.2d 1, 16 (Minn.2004). Francis put Ragland's former boyfriend forward as an alternative perpetrator, but Francis did not have sufficient evidence to connect the former boyfriend to the crime so as to satisfy the alternative perpetrator standard.

 Finally, Francis asserts error in the district court's rulings in allowing the prosecutor to impeach him with a conviction for misdemeanor possession of a firearm and in limiting his inquiry into Pate's pretrial confinement. We need not determine whether these rulings were an abuse of discretion where, even cumulatively in light of the entire record, error, if any, was not prejudicial.

 *Jury Instructions.* Francis asserts error in the denial of his request for jury instructions on lesser-included second-degree unintentional murder offenses. An instruction on a lesser-included offense should be given " 'if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater.' " *State v. Harris,* 713 N.W.2d 844, 849 (Minn.2006) (quoting *Keeble v. United States,* 412 U.S. 205, 208, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973)). The inquiry at trial and on appeal "is made by reviewing the evidence actually adduced at trial in the light most favorable to the party requesting the instruction." *Id.* (citing *State v. Dahlin,* 695 N.W.2d 588, 597 (Minn.2005)). If a lesser-included-offense instruction was warranted by the evidence but denied, the analysis proceeds to whether the defendant was prejudiced. *See Dahlin,* 695 N.W.2d at 599.

Here, where the jury was given a lesser-included-offense instruction as to second-degree intentional, unpremeditated murder and attempt of the same, yet found Francis guilty of first-degree premeditated murder and attempt of the same, we conclude that Francis was not prejudiced by the court's refusal to give instructions as to unintentional murder. *See State v. Shepherd,* 477 N.W.2d 512, 514–516 (Minn. 1991) (holding that when the jury was instructed as to first-degree premeditated murder, second-degree intentional murder, and first-degree heat of passion manslaughter, and the jury returned a verdict of first-degree premeditated murder, the defendant was not prejudiced by the court's failure to give a second-degree felony murder instruction).

 *Ineffective Assistance of Counsel.* Francis claims he was deprived of effective assistance of counsel, asserting that counsel failed to investigate his case, failed to call alibi witnesses, failed to prepare his character witness, failed to question him carefully on direct examination and otherwise failed to defend him adequately at trial. To establish this claim, Francis must show that counsel's "representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Opsahl v. State,* 677 N.W.2d 414, 420–21 (Minn.2004). "What evidence to present and which witnesses to call at trial are tactical decisions properly left to the discretion of trial counsel." *State v. Mems,* 708 N.W.2d 526, 534 (Minn. 2006) (citing *State v. Doppler,* 590 N.W.2d 627, 633 (Minn.1999)). As the postconviction court noted, Francis's allegations of inadequate legal representation are refuted by the record and otherwise fail to show that had trial counsel presented additional evidence and otherwise addressed Francis's concerns, the result would have been different.

*Other Improprieties at Trial.* Francis challenges the seizure of his Tahoe, the jury selection process, the admission of the photographic lineup and the admission of "blurry" photographs; he asserts discovery violations, juror misconduct, and the denial of a speedy trial; and he also states that his convictions rest on invalid laws

and that consecutive sentencing is in error. After a careful examination of these claims, we find them meritless.

### III.

▮ Francis contends that the postconviction court abused its discretion in denying him an evidentiary hearing. A petition for postconviction relief must contain "a statement of the facts and the grounds upon which the petition is based." Minn. Stat. § 590.02, subd. 1(1) (2004). An evidentiary hearing is not required unless facts are alleged that, if proved, would entitle the petitioner to relief. *Hodgson v. State*, 540 N.W.2d 515, 517 (Minn.1995). A petitioner's allegations must be more than argumentative assertions without factual support. *See Beltowski v. State*, 289 Minn. 215, 217, 183 N.W.2d 563, 564 (1971). Francis contends that an evidentiary hearing was needed to evaluate the claims he raised in his postconviction petition and now on appeal to this court. We agree with the postconviction court's denial of a hearing in that the facts as alleged would not entitle Francis to relief.

In conclusion, we are satisfied from our meticulous review of the trial record that Francis was properly convicted and received a fair trial. We further conclude that the denial of postconviction relief without an evidentiary hearing was not an abuse of discretion.

Affirmed.