**Michael Calvin FRANCIS,**
**petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. A09–1466.**

Supreme Court of Minnesota.

May 13, 2010.

Gary R. Wolf, Minneapolis, MN, for appellant.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, MN, for respondent.

## OPINION

DIETZEN, Justice.

After a jury trial, appellant Michael Calvin Francis was convicted of attempted first-degree premeditated murder for the shooting of Marvin Pate and of first-degree premeditated murder for the shooting death of Pamela Ragland. Francis filed a direct appeal, which was stayed so he could pursue a petition for postconviction relief. The postconviction court denied the petition for postconviction relief. We affirmed the convictions and the denial of the first postconviction petition in a consolidated appeal. *Francis v. State (Francis I)*, 729 N.W.2d 584, 588 (Minn.2007). Francis filed a second postconviction petition alleging ineffective assistance of trial counsel. The postconviction court summarily denied Francis's second petition for postconviction relief. Because we conclude that Francis's claims are procedurally barred, we affirm.

The facts surrounding Francis's convictions are set forth in detail in *Francis I*. Briefly, on the evening of May 24, 2004, Marvin Pate and his girlfriend, Pamela Ragland, were sitting in Ragland's car, which was parked in south Minneapolis. Pate got out of the car and was standing by the open front passenger door talking to Ragland when he noticed a blue Chevrolet Tahoe approach from the north and stop in front of him. Pate stated that he saw Francis, who was in the Tahoe, raise a gun and begin firing at him. Pate was shot and fell to the ground. While lying on the ground, he observed the Tahoe's specialty rims and exhaust pipes as it sped away.

Law enforcement officers and medical responders arrived within minutes. When asked who shot him, Pate replied, "It was a blue truck." When asked again on the way to the hospital, Pate stated that it was "Mike." Pate underwent emergency sur-

gery at the hospital for his injuries. Ragland was shot in the head and died a few hours later. In police interviews at the hospital and later at his home, Pate stated that Francis was the shooter and that he drove a blue Tahoe. Also, Pate identified Francis as the shooter from a photographic lineup. A surveillance videotape from a nearby business showed a blue Tahoe in the area at the time of the shooting. Subsequently, police seized a blue Tahoe that was registered to the mother of Francis's girlfriend. Francis was driving the vehicle when the police seized it.

At trial, the State presented evidence consisting of Pate's identification of Francis as the shooter, as well as Francis's cell-phone records. The State's expert testified that the cell-phone records showed frequent use of the cell phone the hour before the shooting, a 15–minute gap around the time of the shooting, and then a resumption of cellphone use after the shooting. The records further indicated that the calls made from Francis's cell phone shortly before the 15–minute gap were processed through a cell-site tower located within the general area of the shooting. The State also presented testimony of a local resident, who stated that on the night of the shooting he heard gunshots and then saw a SUV with a blue glow from the dashboard drive by his house. On examination at the forensic garage, the Tahoe Francis was known to drive was found to have an after-market stereo system that emits a blue light.

The jury found Francis guilty of first-degree premeditated murder and first-degree drive-by-shooting murder for the death of Ragland and of attempted first-degree premeditated murder and attempted first-degree drive-by-shooting murder for the shooting of Pate. Francis was convicted of attempted first-degree premeditated murder of Pate and of first-degree premeditated murder of Ragland.

Francis received a 180–month sentence and a consecutive mandatory life sentence without the possibility of release.

Francis's appellate counsel filed a direct appeal and later filed a brief challenging the convictions. Subsequently, Francis discharged his attorney and sought a stay of his appeal to allow him to institute postconviction proceedings, which the court granted. As part of the appeal, Francis signed a waiver of counsel form acknowledging that he "will be held to the same standard of responsibility as a licensed attorney," that he "cannot later claim that because [he] made mistakes while representing [him]self on appeal that [he is] entitled to a new appeal," and "that all existing legal issues with respect to [his] present conviction and/or sentence must be raised by [him] in this court proceeding or they will be waived." The district court summarily denied the petition for postconviction relief, and his appeal of that denial was consolidated with his direct appeal. In the first appeal, Francis argued that (1) the district court erred in various evidentiary rulings, (2) the jury instructions were incomplete, (3) prosecutorial misconduct deprived him of a fair trial, (4) trial counsel was ineffective, and (5) the evidence was insufficient to support the verdicts. We affirmed Francis's convictions and the summary denial of his first petition for postconviction relief. *Francis I*, 729 N.W.2d at 593.

Francis retained private counsel and filed a second petition for postconviction relief, arguing that his trial counsel was ineffective and that he was entitled to an evidentiary hearing to demonstrate the ineffectiveness. The postconviction court summarily denied the second petition, and Francis appealed.

## I.

Francis argues that the postconviction court abused its discretion by sum-

marily dismissing his second petition for postconviction relief without an evidentiary hearing. Specifically, Francis argues that because he did not have the benefit of appellate counsel in his direct appeal and first petition for postconviction relief, this appeal should be treated as his direct appeal and first postconviction petition.

 Generally, we review the denial of a postconviction petition for an abuse of discretion. *Roby v. State*, 531 N.W.2d 482, 483 (Minn.1995). In doing so, we review questions of law de novo and findings of fact for an abuse of discretion. *Arredondo v. State*, 754 N.W.2d 566, 570 (Minn.2008).

 A person convicted of a crime may file a petition for postconviction relief under Minn.Stat. § 590.01, subd. 1 (2008). The petitioner must prove the facts alleged in the petition by a fair preponderance of the evidence. Minn.Stat. § 590.04, subd. 3 (2008); *State v. Rainer*, 502 N.W.2d 784, 787 (Minn.1993). The postconviction court must hold an evidentiary hearing "unless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2008). An evidentiary hearing is unnecessary if the petitioner fails to allege facts that are sufficient to entitle him to the relief requested. *Leake v. State*, 737 N.W.2d 531, 535 (Minn.2007). "Any doubts as to whether to conduct an evidentiary hearing should be resolved in favor of the party requesting the hearing." *State v. Rhodes*, 627 N.W.2d 74, 86 (Minn. 2001) (citing *State ex rel. Roy v. Tahash*, 277 Minn. 238, 244, 152 N.W.2d 301, 305 (1967)).

 "The Minnesota Constitution guarantees the right to counsel for one review of a criminal conviction, 'whether by direct appeal or a first review by postconviction proceeding.'" *Barnes v. State*, 768 N.W.2d 359, 364 (Minn.2009) (quoting *Deegan v. State*, 711 N.W.2d 89, 98 (Minn. 2006)). But a defendant also has the right to waive the right to counsel and proceed without legal counsel, and the State may not force a lawyer upon the defendant. *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942).

Francis relies on *Bonga v. State*, 765 N.W.2d 639 (Minn.2009), to argue that without legal counsel his first appeal was not meaningful. But *Bonga* is easily distinguished. In *Bonga*, the defendant appealed from the denial of his second petition for postconviction relief seeking review of his claims that the postconviction court concluded were procedurally barred. *Id.* at 642. Bonga did not have the benefit of legal counsel in the proceedings involving his first petition for postconviction relief. *Id.* at 643. We held that Bonga had the right to counsel in his first petition pursuant to Minn. Stat. § 590.05 (2002), and that the postconviction court's denial of Bonga's request for counsel warranted a remand of Bonga's second petition for further consideration. *Bonga*, 765 N.W.2d at 643. Unlike *Bonga*, Francis was represented by appellate counsel through the filing of the brief on direct appeal, and then discharged his attorney. Subsequently, Francis chose to proceed on appeal without the benefit of counsel.

 Francis's argument that his first appeal was not meaningful because he did not have the benefit of appellate counsel lacks merit for two reasons. First, Francis chose to proceed pro se and is held to the standard of an attorney in presenting his appeal. *See State v. Seifert*, 423 N.W.2d 368, 372–73 (Minn.1988) (concluding that a defendant can waive the right to counsel and proceed pro se on an appeal and a pro se defendant "will be held to the standard of an attorney in presenting his appeal"), *superseded on other grounds by rule*, Minn. R.Crim. P. 28.02, subds. 5(17)–

5(19), *as recognized in Black v. State*, 560 N.W.2d 83, 86 (Minn.1997). Because Francis elected to proceed pro se on appeal, his representation is presumed effective. *See Faretta v. California*, 422 U.S. 806, 834 n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (concluding that a defendant who elects to represent himself cannot later complain that the quality of his own defense amounted to a denial of effective assistance of counsel). Second, in the notarized waiver, Francis acknowledged that he "w[ould] be held to the same standard of responsibility as a licensed attorney," that he "understand[s] that [he] cannot later claim that because [he] made mistakes ... [he would be] entitled to a new appeal," and that claims not raised in that appeal would be waived. Pursuant to the waiver, Francis gave up the right to appellate counsel. Consequently, we decline to treat this appeal as if it was Francis's first appellate review of his convictions.

## II.

■ In his second postconviction petition, Francis argues that his trial counsel was ineffective and that he is entitled to an evidentiary hearing to prove his claims. The State contends that this claim is procedurally barred. Where a direct appeal has been taken, all matters raised therein, and all claims known or that should have been known, will not be considered in a subsequent petition for postconviction relief. *Leake*, 737 N.W.2d at 535 (citing *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976)). This procedural bar is subject to two exceptions: (1) the claim is so novel that its legal basis was not reasonably available to counsel when the direct appeal was taken and decided; and (2) even if the claim's legal basis was sufficiently available, substantive review may be allowed when fairness so requires and when the petitioner did not deliberately and inexcusably fail to raise the issue on direct appeal. *Id.*

■ Francis asserts that his trial counsel was ineffective because he was not prepared for trial and failed to call alibi witnesses. In *Francis I*, we specifically rejected claims that Francis's trial counsel failed, among other things, to investigate his case, to call alibi witnesses, and to defend him adequately at trial. 729 N.W.2d at 592. We concluded that "Francis's allegations of inadequate legal representation are refuted by the record." *Id.* Therefore, the postconviction court did not abuse its discretion when it summarily denied those claims. *See Lynch v. State*, 749 N.W.2d 318, 322 (Minn.2008) ("We conclude that [defendant]'s claim ... has already been raised, litigated, and decided on direct appeal; therefore, it is barred by *Knaffla* and must be denied.")

■ Additionally, Francis argues that his counsel failed to cross-examine the State's expert effectively to show that the cell-site tower testimony was exculpatory and failed to present testimony that the trajectory of one of the bullet holes in the victim's vehicle proved that the shots did not originate from the blue Tahoe. But Francis argued in his first petition that his counsel failed to cross-examine "the [e]xpert witness from Qwest Communication International Inc.," regarding the cell-tower usage. He also argued that his counsel failed to point out the inconsistencies in the State's evidence, including pictures introduced in evidence that showed the bullet hole was "less than a foot off the ground," and that "there is no way a person sitting in a tall SUV could shoot out from the window ... into the car ... less than a foot from the ground." We rejected those arguments when we rejected his ineffective assistance of counsel claims generally. *See Francis I*, 729 N.W.2d at 592. Consequently, we conclude that his claims of ineffective assistance of counsel were known and raised in his appeal from

the denial of his first postconviction petition and therefore are *Knaffla*-barred, and further that the two exceptions to the procedural bar are not applicable.[1]

But even if we did address Francis's claims of ineffective assistance of trial counsel on the merits, we conclude that he has failed to prove that trial counsel was ineffective. To assert a claim of ineffective assistance of counsel, a defendant must prove that counsel's performance fell below an objective standard of reasonableness and that a reasonable probability exists that the outcome would have been different but for counsel's errors. *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Sanchez–Diaz v. State,* 758 N.W.2d 843, 847 (Minn.2008). There is "a strong presumption that a counsel's performance falls within the wide range of 'reasonable professional assistance.'" *State v. Jones,* 392 N.W.2d 224, 236 (Minn. 1986). We generally do not review ineffective assistance of counsel claims based on trial strategy. *Opsahl v. State,* 677 N.W.2d 414, 421 (Minn.2004).

Here, the determination by trial counsel of whether to call two "alibi witnesses," whether to call an expert witness to testify about alleged problems with bullet-hole trajectory, and whether to cross-examine the State's expert on the cell-site tower testimony constitutes trial strategy. *See Francis I,* 729 N.W.2d at 592 (citing *State v. Mems,* 708 N.W.2d 526, 534 (Minn. 2006)). Consequently, Francis has failed to establish that counsel's performance fell below an objective standard of reasonableness. Additionally, there is no reasonable probability that the outcome of the trial would have been different but for counsel's

alleged errors. Specifically, the desired testimony does not refute Pate's identification of Francis as the shooter, the surveillance videotape placing the blue Tahoe near the scene of the crime, a resident's testimony that he observed a SUV leaving the scene with a "blue light" like the Tahoe Francis was known to drive, and that Francis was driving the blue Tahoe at the time it was seized pursuant to a warrant. Francis failed to establish either element of the *Strickland* test and therefore is not entitled to relief on the merits of his claims.

Affirmed.

---

1. The State argues that the precise issues were raised in Francis's first petition for postconviction relief and therefore law of the case should apply to prevent those issues from being relitigated, citing *Chippewa County Bank v. Kief,* 179 Minn. 284, 288–89, 229 N.W. 130, 132 (1930). However, because we hold that Francis's claims are *Knaffla*-barred, we do not need to reach this issue.