*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2208**

Jeremy John Huey, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed July 28, 2014
Affirmed
Connolly, Judge**

Olmsted County District Court
File No. 55-CR-12-56

Cathryn Middlebook, Chief Appellate Public Defender, Melissa Sheridan, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Assistant County Attorney, Rochester, Minnesota (for respondent)

        Considered and decided by Schellhas, Presiding Judge; Peterson, Judge; and Connolly, Judge.

**CONNOLLY**, Judge

Appellant challenges his domestic-assault conviction, arguing that the district court abused its discretion by finding no error in the admission of the complainant's out-of-court statement as an excited utterance and by concluding that the prosecutor did not commit misconduct during appellant's cross-examination or closing argument. Because the district court did not abuse its discretion, we affirm.

## FACTS

On January 4, 2012, T.M.W. called 911 and reported that her boyfriend, appellant Jeremy Huey, had just assaulted her in her home. About six minutes after the call, a deputy arrived and interviewed T.M.W., who described the incident.

Appellant was charged with one count of felony domestic assault by strangulation and two counts of misdemeanor domestic assault. T.M.W. was compelled to testify at appellant's trial. The jury convicted appellant on all three counts, and he was placed on probation. After two probation violations were found to be intentional and willful, his probation was revoked, and he was resentenced to 18 months in prison.

In an amended petition for postconviction relief, appellant challenged his conviction on the grounds that T.M.W.'s statement to the police officer was improperly admitted as an excited utterance and that the prosecutor committed misconduct during cross-examination of appellant and closing argument. The district court summarily dismissed his petition, and he appeals, arguing that T.M.W.'s statement to the police officer was not an excited utterance and that the prosecutor committed misconduct by

cross-examining appellant about a prior conviction and referring during closing argument to the fact that appellant was on probation in another state.

**D E C I S I O N**

"Generally, we review the denial of a postconviction petition for an abuse of discretion; questions of law are reviewed de novo, and findings of fact for an abuse of discretion. In doing so, we review questions of law de novo and findings of fact for an abuse of discretion." *Francis v. State*, 781 N.W.2d 892, 896 (Minn. 2010).

## 1. Excited Utterance

The "excited utterance" exception to the prohibition against hearsay admits a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Minn. R. Evid. 803(2); *see also State v. Edwards*, 485 N.W.2d 911, 914 (Minn. 1992) (noting that the exception requires first a startling event or condition, then a statement both relating to the event or condition and made under the stress caused by the event or condition). The district court's evidentiary rulings will generally not be reversed absent a clear abuse of discretion. *State v. Flores*, 595 N.W.2d 860, 865 (Minn. 1999) (reviewing hearsay ruling).

The district court asked the prosecutor if he wanted to make an offer of proof for the recording of T.M.W.'s conversation with the police officer. The prosecutor said:

> [I]t was an excited utterance[, a]lthough her demeanor is certainly less elevated than it [was] during the 911 call. . . . [O]nly a couple of minutes had passed. The 911 call is placed at 7:38, the deputy responds at 7:44. He would testify about her general demeanor and certainly the time frame is such

3

that she would still be within the stress or the excitement of the struggling event, specifically the assault.

The deputy was asked to describe T.M.W.'s demeanor during the interview and said, "In my opinion she was visibly upset . . . ." When asked what he could see, the deputy answered, "[S]he was kind of shaking, eye contact with me, not looking away. . . . [S]he was focused on talking to me about what had happened when I asked her direct questions. So I could tell she was generally concerned about what had taken place." When asked when the assault occurred, the deputy answered, "[T.M.W.] said it happened about 7-ish, 7:15 . . . within 20 minutes or so [of our conversation]."

After hearing the recordings of both T.M.W.'s 911 call and her interview with the deputy, the district court said:

> I find [the interview] to be an excited utterance. It's well within the time frames that are described by cases that admit evidence as excited utterances. They go out hours or even longer. . . . This was in a very short time of what by all accounts is a startling event or condition. The manner of her speech that the [interview] tape reveals is more calm than she was with the 911 operator, that's obvious. But I don't think it's without indications of it still being under the stress of the excitement caused by the event. . . . I also detected . . . a rapidity of speech, a kind of forced speech. There were times when the story, in response to [the deputy's] questions, just . . . spilled out of her. . . . [T]hat's an indication that she was still under the stress of excitement caused by the event or condition.

The postconviction court agreed with the district court that the tape of the interview was admissible as an excited utterance.

Appellant argues that, while T.M.W. "certainly sounded excited and stressed when she talked to the 911 dispatcher . . . the recording of her interview with [the deputy] some

4

time later reveals she had calmed down considerably." But "some time later" was six minutes later: the deputy arrived six minutes after the 911 call, and he testified that T.M.W. was still in an excited condition when she spoke to him. The district court heard the recording of their interview and found that T.M.W. was "under the stress of excitement caused by" appellant's assault. Thus, both the tape of the interview and the deputy's testimony support the application of the "excited utterance" exception; the district court did not abuse its discretion in admitting the tape as an excited utterance.

## 2. Prosecutorial Misconduct

### A. Cross-examination

Appellant argues that, during cross-examination, the prosecutor committed misconduct by asking if a fight in 2000 that led to appellant's conviction was "more serious" than a bar fight and if that fight "caused significant injury" to a victim. But, during direct examination, appellant's attorney had asked him, "[I]n . . . October 2000 you ended up with a conviction for assault . . . correct?" and "[T]hat was for a bar fight, right?". These questions opened the door for the prosecutor's questions. "Opening the door occurs when one party by introducing certain material . . . creates in the opponent a right to respond with material that would otherwise have been inadmissible." *State v. Bailey*, 732 N.W.2d 612, 622 (Minn. 2007) (quotation omitted); *State v. DeZeler*, 230 Minn. 39, 45, 41 N.W.2d 313, 318 (1950) ("Where one party introduces inadmissible evidence, he cannot complain if the court permits his opponent in rebuttal to introduce similar inadmissible evidence."); *see also State v. Valtierra*, 718 N.W.2d 425, 436 (Minn. 2006) (noting that interrogation about prior convictions should be limited to the fact of

5

the conviction, the nature of the offense, and the identity of the defendant). The district court did not abuse its discretion in determining that the prosecutor's questions were not misconduct.

Moreover, appellant's attorney objected to the prosecutor's questions; the objections were sustained, and the questions were not answered. The jury learned nothing about the 2000 incident and was instructed that the incident's only significance was its relationship to appellant's credibility. The prosecutor's questions were not misconduct, but, if they had been, the error was harmless beyond a reasonable doubt, and appellant is not entitled to a new trial. *See State v. Mayhorn*, 720 N.W.2d 776, 785 (Minn. 2006) (noting that, where there has been an objection to prosecutorial misconduct but the misconduct is harmless beyond a reasonable doubt, a new trial will not be granted).

### B.    Closing Argument

Appellant was asked on direct examination about his prior convictions and said "That's correct" to the statement that "you also have a drug conviction from . . . Barren County, Wisconsin from . . . something happening in February of 2010." The prosecutor said in closing argument:

> One thing [appellant] told you, though, gives him an even greater stake in the outcome of this case. He told you he's also on probation in Wisconsin. That gives him an even greater stake in the outcome of this case because it's going to affect something else for him as well.

Appellant argues that this reference to his probation status was prosecutorial misconduct. Appellant's attorney did not object during or after closing argument, so the

6

standard of review is plain error. *See State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006) (stating that defendant must demonstrate that error occurred and that error was plain, but prosecution must show lack of prejudice).

No error occurred in the prosecutor's closing argument. Because appellant's attorney opened the door to his probationary status by inquiring about a drug conviction from an incident two years earlier in another state, the prosecutor would have been entitled to cross-examine appellant about his probation status. *See* Minn. R. Evid. 616 (providing that evidence of a witness's interest is admissible to test witness's credibility); *State v. Johnson*, 699 N.W.2d 335, 339 (Minn. App. 2005) (concluding that, even when a defendant had not testified about his probationary status on direct examination, "the district court did not abuse its discretion by allowing the state to cross-examine [the defendant] about his probationary status to show that he had a motive to lie"). Because appellant's probationary status was relevant to his interest in not being convicted, it was not plain error for the prosecutor to mention appellant's probationary status in closing argument.

Even if the reference to appellant's probationary status had been plain error, the error would not have prejudiced appellant. *See Ramey*, 721 N.W.2d at 302 (giving prejudice as an element of the plain-error test). As the prosecutor pointed out to the jury, appellant had, and knew that he had, "a large stake in the case." The testimony of T.M.W. and the deputy make it very unlikely that the prosecutor's brief reference to probation had a significant role in the jury's conviction of appellant.

**Affirmed.**