*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2123**

State of Minnesota,
Respondent,

vs.

Kyle Richard Dobson,
Appellant.

**Filed August 25, 2014
Affirmed
Chutich, Judge**

Hennepin County District Court
File No. 27-CR-12-32172

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rochelle R. Winn, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Halbrooks, Presiding Judge; Ross, Judge; and Chutich, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CHUTICH**, Judge

On appeal from his convictions of prohibited person in possession of a firearm, fleeing a peace officer, and fifth-degree drug possession, appellant Kyle Richard Dobson

contends that the prosecutor committed misconduct during her closing argument and that he received ineffective assistance of trial counsel. Because the prosecutor properly argued an inference from the record and the performance of Dobson's counsel was not objectively unreasonable, we affirm.

## FACTS

In the early morning hours of September 25, 2012, Dobson was with J.L. and J.S. at a motel in Burnsville. Along with a few others, they were drinking alcohol and smoking methamphetamine in the motel room. J.S. saw Dobson with methamphetamine. J.L. gave J.S. methamphetamine, which J.S. understood came from Dobson. Eventually Dobson agreed to give J.L. and J.S. a ride home. On their way, they stopped for gas at a Holiday gas station in Bloomington.

Around 7:00 a.m. that morning, Officer Douglas Barland and Officer Mark Schiebel of the Bloomington Police Department were at the same Holiday gas station. Officer Barland saw a man, later identified as Dobson, talking on a cell phone at the store's counter. Dobson appeared to receive a credit card number over the phone to make his payment, leading the officer to suspect that he may be committing financial transaction card fraud. Officer Barland also saw that the pick-up truck that Dobson entered did not have a front license plate. Before the officers could investigate further, the truck left the gas station.

At about 7:20 a.m., the officers learned that a person living nearby reported that a man was running through residential yards. Officers Barland and Schiebel left the gas

2

station to investigate and found the suspicious truck that was at the gas station earlier. Dobson was driving the truck, with J.S. and J.L. as passengers.

After seeing Dobson turn left onto southbound Xerxes Avenue without appearing to signal or fully stop, Officer Barland activated his siren to stop the truck. But Dobson kept driving at about 45 miles per hour, and he did not stop or signal before turning left onto 90th Street. Dobson drove at about 60 miles per hour along 90th Street. J.S., who was sitting between Dobson and J.L. in the cab of the truck, saw Dobson holding a gun and saw him throw it out of the driver's side window.

Dobson pulled over at the top of the hill on 90th Street, just west of Queen Avenue. As soon as the truck stopped, J.L. and J.S. jumped out. The police ordered J.L. and J.S. to the ground, while Dobson remained in the vehicle. Dobson was initially uncooperative with the police, but he eventually complied with their commands.

The officers arrested Dobson and the two passengers. As they were investigating the scene, the officers discovered a small bag of methamphetamine on the ground near the front passenger door of the truck. At the jail, J.S. told the police that she saw Dobson throw a gun out of the window of the truck after they turned onto 90th Street.

As the police searched the neighborhood for the gun, a neighborhood resident informed them that an object hit his wife's car earlier that morning. The resident's wife, K.B., had pulled over as she was driving down 90th Street because she saw police cars and a speeding pick-up truck traveling toward her. As the truck passed K.B., she noticed the driver looking in her direction and then heard a "loud noise hitting the car." Officer Barland met with K.B. that day and observed scratches on the windshield and "rubber

3

scuff mark[s]" on the hood of her car. He thought that this damage was consistent with the car having recently been struck by the firearm that Dobson threw out the truck's window.

Later in the day, another neighborhood resident, M.J., reported to the police that he found a .38 revolver during his morning walk that day near the intersection of 90th Street and Vincent Avenue South. This location is where K.B.'s car was struck by an object.

In viewing two of the squad videos taken during the pursuit, the officers saw that, immediately after J.L. and J.S. left the truck after it pulled over, Dobson threw a small object out of the passenger window. The officers determined that it was the bag of methamphetamine that they recovered on the ground outside of the truck.

On September 27, 2012, the state charged Dobson with the crimes of prohibited person in possession of a firearm, fleeing a peace officer in a motor vehicle, and fifth-degree possession of a controlled substance. *See* Minn. Stat. §§ 152.025, subd. 2(a)(1), 609.487, subd. 3, 624.713, subds. 1(2), 2(b) (2010).

A jury trial ensued. The state's witnesses included J.S.; officers from the Bloomington Police Department; the witness who found the gun; the witness whose car was damaged; and two forensic scientists from the Bureau of Criminal Apprehension. The district court admitted the squad car video recordings from the morning of the offenses. The state presented forensic evidence that Dobson's DNA was the predominant profile on the gun's trigger. Dobson did not testify.

The jury found Dobson guilty of all three counts. This appeal followed.

# DECISION

## I.  Prosecutorial Misconduct

Dobson asserts that the prosecutor erred when she told the jury during closing argument that he sold methamphetamine because Dobson was not charged with selling drugs and the statements were not supported by the record.  Because Dobson did not object to the alleged misconduct at trial, we review under a modified plain-error standard.  *See State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006).  Under this standard, Dobson must show that error occurred and that it was plain.  *Id.*  If Dobson shows plain error, the burden shifts to the state to show that the error did not affect the defendant's substantial rights.  *Id.*

A prosecutor's actions may be misconduct if they have the effect of materially undermining the fairness of a trial or if they violate "clear or established standards of conduct, e.g., rules, laws, orders by a district court, or clear commands in this state's case law."  *State v. Fields*, 730 N.W.2d 777, 782 (Minn. 2007).  A prosecutor may not make statements in closing arguments that do not have support in the trial record.  *State v. Kirvelay*, 311 Minn. 201, 202, 248 N.W.2d 310, 311 (1976).  Prosecutors must also "avoid inflaming the jury's passions and prejudices against the defendant."  *State v. Porter*, 526 N.W.2d 359, 363 (Minn. 1995).

Prosecutors may, however, "state conclusions and inferences which the human mind may reasonably draw from the facts in evidence."  *State v. Swaney*, 787 N.W.2d 541, 561 (Minn. 2010) (quotation omitted); *see State v. Van Keuren*, 759 N.W.2d 36, 43 (Minn. 2008) ("[C]ounsel may use all legitimate arguments on the evidence, to analyze

and explain the evidence, and to present all proper inferences to be drawn therefrom during closing argument." (quotation omitted)). "When evaluating alleged misconduct, a court will look at the closing argument as a whole." *State v. Swanson*, 707 N.W.2d 645, 656 (Minn. 2006).

In her closing argument, the prosecutor referred to testimony from trial when she stated that Dobson "sold meth to [J.L.]" and "had a little baggie packaged for sale." These statements were not misconduct. An inference that Dobson sold methamphetamine may be reasonably drawn from the evidence. J.S. testified that J.L. received methamphetamine from Dobson and that Dobson provided all of the methamphetamine at the motel. Officer Spencer Saari testified that the methamphetamine that Dobson possessed was packaged in a baggie, and he responded affirmatively to the state's question of whether "when people sell methamphetamines they sell it in these small bags." The prosecutor argued that J.S. and Officer Saari's testimony supported the conclusion that the methamphetamine seized near the truck belonged to Dobson.

We do not agree with Dobson that the prosecutor's three references to selling drugs "emphasiz[ed]" that Dobson was an "unsavory and criminal character." Rather, the prosecutor's lengthy closing argument focused on the charges—possession of drugs, fleeing the police, and prohibited person in possession—and the evidence that related to those charges. By referring twice to one purported drug sale and stating that Dobson possessed drugs "packaged for sale," the prosecutor did not emphasize that Dobson was an alleged drug dealer. Nor did she ever call him a "drug dealer." And the prosecutor

did not mention any drug sales in her rebuttal argument. Viewing the closing argument as a whole, no plain error occurred here.

## II.  Ineffective Assistance of Counsel

In his supplemental pro se brief, Dobson contends that his trial counsel was ineffective. We review claims of ineffective assistance of counsel de novo. *Dobbins v. State*, 788 N.W.2d 719, 728 (Minn. 2010).

Defendants are guaranteed the right to effective assistance of counsel. U.S. Const. amend. VI; Minn. Const. art. I, § 6. To show that he did not receive effective assistance, Dobson must demonstrate "that (1) his counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that, but for his counsel's unprofessional errors, the result of the proceedings would have been different." *State v. Nissalke*, 801 N.W.2d 82, 111 (Minn. 2011) (quotation omitted). Objective reasonableness is "representation by an attorney exercising the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances." *Opsahl v. State*, 677 N.W.2d 414, 421 (Minn. 2004) (quotation omitted).

Specifically, Dobson asserts that his trial counsel should have called J.L. as a witness, disputed the admissibility of the DNA evidence by requesting a *Frye-Mack* hearing, and called an expert witness to testify about the DNA evidence. These decisions by Dobson's trial counsel are ones of trial strategy, and we do not review those challenges. *See Dobbins*, 788 N.W.2d at 731. "[D]ecisions to present certain evidence and call certain witnesses at trial are tactical decisions properly left to the discretion of

trial counsel, and such decisions do not prove that counsel's performance fell below an objective standard of reasonableness." *Nissalke*, 801 N.W.2d at 111 (quotation omitted).

Moreover, Dobson does not explain how testimony from J.L. would have led the jury not to convict him, other than claiming that J.L. had a motive not to possess a gun because he was also prohibited from doing so. But evidence that J.L. may have also possessed the gun does not prove that Dobson did not possess it. And the evidence that Dobson possessed the gun was not entirely circumstantial, as he claims. Rather, the state introduced direct evidence of his possession—J.S. testified that she saw Dobson with the gun and saw him throw it out of the truck window. *See State v. Clark*, 739 N.W.2d 412, 421 n.4 (Minn. 2007).

In addition, counsel's decision to consult a DNA expert before trial was reasonable in trying to best defend his client. *See State v. Beecroft*, 813 N.W.2d 814, 839 (Minn. 2012) ("[I]f factfinders are exposed to the opinions of the government's expert witnesses, a defendant must have an equal opportunity to present to the factfinders the opposing views of the defendant's experts."). Dobson's counsel may have consulted this expert to prepare possible defenses and cross-examination that he then used at trial. The record shows that trial counsel challenged the DNA evidence at trial in his cross-examination of the forensic scientist: counsel asked her questions about the size of the DNA samples, the similarities between M.J. and Dobson's DNA profiles, the testing procedures, and the possibility of transfers and other contributors to the mixtures. Counsel's decisions not to request a *Frye-Mack* hearing and not to call the expert at trial fall squarely within "tactical decisions properly left to the discretion of trial counsel."

*See Nissalke*, 801 N.W.2d at 111 (quotation omitted) (holding that decision not to file pretrial motion regarding evidence is trial strategy); *Francis v. State*, 781 N.W.2d 892, 898 (Minn. 2010) (holding that decision whether to call expert witness is trial strategy).

Because Dobson's trial counsel exercised "the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances," we conclude that Dobson did not receive ineffective assistance of counsel. *See Opsahl*, 677 N.W.2d at 421 (quotation omitted); *see also Nissalke*, 801 N.W.2d at 111 ("We need not address both the performance and prejudice prongs if one is determinative." (quotation omitted)).

**Affirmed.**