**STATE of Minnesota, Respondent,**

v.

**Daniel Brian DALBEC, Appellant.**

**No. A09–568.**

Court of Appeals of Minnesota.

May 4, 2010.

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, MN, and Tom Kelly, Wright County Attorney, Buffalo, MN, for respondent.

Julie Loftus Nelson, Frederic Bruno & Associates, Minneapolis, MN, for appellant.

Considered and decided by PETERSON, Presiding Judge; KLAPHAKE, Judge; and SHUMAKER, Judge.

## OPINION

SHUMAKER, Judge.

On direct appeal from his conviction of criminal sexual conduct in the third degree, appellant argues that his attorney's failure to "appear" for final argument through the submission of a written summation after a bench trial, as agreed by the parties and approved by the district court, was ineffective assistance of counsel that, under the particular facts of this case, constituted structural error requiring reversal. We agree and are compelled to reverse the conviction and remand the matter for a new trial.

## FACTS

We are asked to determine whether defense counsel's failure to submit a written final argument—as he and the prosecutor agreed to do—resulted in reversible structural error in appellant Daniel Brian Dalbec's bench trial on the charge of criminal sexual conduct in the third degree.

The dispositive facts are not materially in dispute. They show that S.J. awoke at 5:00 a.m. on July 1, 2006; engaged in rigorous exercise to train for a triathlon; went to some bars and a local festival later in the day; and, at about 9:00 p.m., attended a party at the home of her brother's friend, where Dalbec also lived. She had consumed some alcohol during her evening activities but she stopped drinking at 10:30 p.m.

At some point, the police came to the house because neighbors had complained of noise from the party. Many guests then left but the homeowner invited others to stay overnight if they wished. S.J. was exhausted and decided to stay.

Between midnight and 1:00 a.m., S.J. spoke with her mother by telephone and told her that she would be staying at the homeowner's house. S.J. then began looking for a place to sleep and asked her friend J.P. if she wanted to find a place to sleep with her. J.P. indicated that she was not going to spend the night.

S.J. testified that she then laid down on a couch and fell asleep almost immediately. She testified that she remembered nothing further until the next morning when she woke up in Dalbec's bedroom, lying next to

him. She stated that she was experiencing vaginal pain upon awakening, and she noticed that her underwear was pulled down and her bra was pulled up. Dalbec was naked, but he denied that anything improper had happened.

Testifying for the prosecution, J.P. recalled that, after she told S.J. that she was going home, S.J. approached Dalbec and asked him if she could sleep in his bedroom. He told her that she could and that he would sleep on the floor.

Believing that she had been sexually assaulted by Dalbec, S.J. notified the police. The state eventually charged Dalbec with criminal sexual conduct in the third degree in violation of Minn.Stat. § 609.344, subd. 1(d) (2004), alleging that Dalbec sexually penetrated S.J. while she was physically helpless, a condition of which he was aware. A person who is asleep during a sexual assault is considered to be physically helpless under Minn.Stat. § 609.341, subd. 9 (2004).

At the conclusion of the testimony in Dalbec's bench trial, the district court asked counsel how they wanted to present their respective final arguments. Defense counsel suggested that simultaneously filed written summations would be sufficient. The prosecutor agreed, and the court set the deadline for the submissions. When defense counsel failed to file a written final argument by the deadline, a court clerk telephoned him to remind him that the written argument was due. The call produced no response, and the court issued its findings, conclusions, and judgment determining Dalbec guilty as charged.

This appeal follows.

## ISSUE

Can a criminal defense lawyer's failure to "appear" for final argument by failing to submit a written summation, as agreed by the parties and approved by the court, constitute structural error requiring automatic reversal?

## ANALYSIS

■ Dalbec's principal challenges on appeal are that (1) the evidence was insufficient to prove beyond a reasonable doubt that S.J. was physically helpless at the time of penetration; and (2) defense counsel's failure to submit a written final argument as he agreed to do was ineffective assistance of counsel and, under the facts of this case, constituted structural error. Although Dalbec's second challenge is dispositive of the appeal, that challenge is informed to some extent by the issue of the sufficiency of the evidence. We offer brief comment on it.

Semen was found in S.J.'s vagina after the alleged assault and DNA analysis linked it to Dalbec. He concedes that "some form of penetration is the only rational explanation for his semen being found in S.J.'s vagina." He also concedes that had S.J. "actually been asleep, he would have had reason to know of her condition." Thus, Dalbec states that the only element of the charge he disputes is the statutory requirement that the victim was helpless when the penetration occurred. The evidence to support that element is problematic.

Because of the charge against Dalbec, the state was required to prove beyond a reasonable doubt that the penetration occurred while S.J. was asleep—for that was the state's theory of helplessness—and not at another time. Although the district court found that S.J. "credibly testified that she was asleep on July 2, 2006 when the sexual penetration occurred," S.J. actually testified that she did not recall anything at all from the time she fell asleep on the couch until the next morning when she

woke up in bed next to Dalbec. She did not recall asking Dalbec if she could sleep in his bedroom; Dalbec's agreement that she could; Dalbec's assurance that he would sleep on the floor; or her own entry into the bedroom—all uncontradicted facts in evidence. That leaves a period of time between S.J.'s entry into the bedroom and when she fell asleep in the bed that is unaccounted for and as to which the record is devoid of evidence. If Dalbec penetrated her, even against her will, during that period, an essential element of the crime is unproved.

Nearly all of the evidence in the case was circumstantial and the court drew inferences from it and assessed credibility, as it was entitled to do. Thus, we are not prepared to conclude that the evidence of Dalbec's guilt was insufficient, and we offer our observations of the evidence solely to provide a context for the claim of ineffective assistance of counsel.

■ A claim of ineffective assistance of counsel raises mixed questions of fact and law, which we review de novo. *Opsahl v. State,* 677 N.W.2d 414, 420 (Minn.2004). The factual record here is complete and undisputed with respect to this issue. Thus, we consider the issue as a matter of law.

To prevail on a claim of ineffective assistance of counsel, the accused must show that "his counsel's representation 'fell below an objective standard of reasonableness' and 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Gates v. State,* 398 N.W.2d 558, 561 (Minn.1987) (quoting *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984)).

■ It is the state's position that defense "counsel's decision not to make a closing argument should be governed by the general rule that trial strategy is not reviewed." Of course, we recognize that many acts and omissions by trial counsel can be the product of trial strategy and tactics, even if they are not successful. *See State v. Bobo,* 770 N.W.2d 129, 139 (Minn.2009) (recognizing trial tactics as purposeful strategy and not subject to review). But we would be remiss to hold that every decision by trial counsel is a strategic one, however implausible a proposition that might be. We cannot, with intellectual honesty, characterize a trial lawyer's decision as strategic unless that decision may truly be located within the realm of strategy, even if it might be found at the far reaches of that realm.

Here, we cannot conceive of any strategic reason for defense counsel to suggest that final arguments be made in writing and then to fail to submit his own argument, even after prompting by a court official. Our conclusion that this could not have been a strategic waiver is supported by the record. We have noted above that the evidence as to an essential element of the charge is not only arguably insufficient but that the court's finding that S.J. *testified* that the penetration occurred while she was asleep is erroneous. An effective final argument would have emphasized that there was no evidence to fully address an essential element of the charge. There are also other matters that an effective final argument would have highlighted. For example, the court concluded that, if S.J. was not physically helpless because she was asleep or unconscious, "alternatively" she was unable to withhold consent because of a physical condition. But there was no evidence that S.J. had any sort of physical condition that could have impaired her ability to withhold her consent to engage in sex. Additionally, that conclusion contradicts the evidence, the state's theory, and the court's own finding that S.J.

was helpless because she was asleep. An effective final argument would have held the charge and supporting facts in narrow focus.

In its memorandum, the court stated that S.J. "does not remember the interaction with [Dalbec] before entering his room, but this is irrelevant." What S.J. did and did not remember regarding the prospect of going into Dalbec's bedroom certainly was relevant, and an effective final argument would have directed the court's attention to S.J.'s lack of recollection as a vital fact on the issue of helplessness. The court also stated in its memorandum that S.J. had recently returned "from vacationing abroad, and was likely recovering from jet lag." Neither S.J. nor any other witness testified to facts from which the court could draw that inference. Furthermore, according to the record, S.J. returned home from Central America on June 25. The sexual penetration occurred on July 2, making any claim of jet lag unreasonable. Counsel could not anticipate in a final argument that the court might conclude that S.J. was suffering from jet lag, but an effective final argument would confine the court's attention to the actual evidence in the case and only to reasonable inferences that might be drawn from that evidence.

Even judges listening carefully to evidence in a bench trial can miss facts, fail to note them, misunderstand them, or fail fully to appreciate their significance. At least one critical function of an effective final argument is to anticipate problems a trier of fact might have in assimilating evidence into a decision, and then attempt to persuasively show how the evidence can rationally be linked to the law to achieve a fair outcome. As the Supreme Court acknowledged, a closing argument "may correct a premature misjudgment and avoid an otherwise erroneous verdict." *Herring*

*v. New York,* 422 U.S. 853, 863, 95 S.Ct. 2550, 2556, 45 L.Ed.2d 593 (1975). Dalbec did not receive such assistance from his lawyer. His lawyer's default was not a strategic act. It fell well below the conduct an accused is entitled to expect and to receive from his attorney. Without question, under the facts of this case, Dalbec received clearly ineffective assistance from his defense attorney.

■ Deficiencies in the trial process can fall into either of two categories: (1) trial errors or (2) structural errors. *State v. Dorsey,* 701 N.W.2d 238, 252 (Minn.2005) (citing *Arizona v. Fulminante,* 499 U.S. 279, 309, 111 S.Ct. 1246, 1264, 113 L.Ed.2d 302 (1991)). Trial errors, such as the failure to object to inadmissible evidence, may be assessed in the context of the case to determine whether the errors were harmless beyond a reasonable doubt. *Dorsey,* 701 N.W.2d at 252. Thus, "[i]n cases involving trial errors, we apply a harmless error test...." *Id.*

■ "In contrast, structural errors are defects in the constitution of the trial mechanism, which defy analysis by harmless-error standards." *Id.* (quotations omitted). As an example of a structural error, the United States Supreme Court cited the total deprivation of the right to counsel at trial. *Fulminante,* 499 U.S. at 309, 111 S.Ct. at 1264.

■ Although there was no total deprivation of counsel for the entire trial here, as discussed below, there was complete deprivation of counsel for an entire critical stage of the trial. Because the stages of a trial are not discrete parts but are meaningfully interrelated, we cannot conclude that structural error can occur only if an accused is completely deprived of counsel for all stages.

■ The right to counsel guaranteed by the Sixth Amendment to the United

States Constitution is the right to effective assistance of counsel. *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984). That right extends to all critical phases of the trial and related proceedings. *See Bonga v. State*, 765 N.W.2d 639, 643 (Minn.2009) (noting that the district court's failure to recognize a defendant's right of representation by counsel during a motion to vacate a sentence was a denial of counsel). Closing argument is a critical phase of a trial and is a "basic element of the adversary fact finding process in a criminal trial." *Herring*, 422 U.S. at 858, 95 S.Ct. at 2553. *See also State v. Tereau*, 304 Minn. 71, 74, 229 N.W.2d 27, 28 (1975) (stating that to deny a defendant his right to give a closing argument is a denial of due process and the fair benefit of counsel).

Dalbec analogizes his attorney's default to cases in which defense counsel was not present in person during a critical trial stage. The state counters that it is not mandatory that counsel give a final argument; that the presence of counsel was not required because the arguments were to be submitted in writing and filed without a personal appearance; that the case is akin to one in which counsel failed to file a required document; and finally that Dalbec "points to nothing that could have been said in the closing argument that would have given the judge any insights to the case that he did not already have. . . ."

Although the situation here is not the same as one in which counsel is required to be personally in attendance and fails to appear, neither is it the same as a case in which counsel merely fails to file a document. We are aware that parties and lawyers in a case can "appear" either in person or through a writing submitted in lieu of a personal appearance. The concern is not so much whether there has not been a personal appearance but rather the

focus should be on the purpose of the appearance and the possible consequences of nonappearance. The lawyers here opted to "appear" through their written arguments, the purpose of which was to argue the respective positions of the parties. Dalbec's lawyer failed to "appear" in the manner agreed by counsel and approved by the court. The undeniable consequence of defense counsel's failure to appear as agreed was that the court was able to consider only the prosecutor's argument and the prosecutor's view of the evidence. And the notion that a defense argument could not have provided the court with insights it had not already gathered from the trial is demonstrably faulty. As we have discussed, the court erred in some findings and based its conclusion that penetration occurred when S.J. was asleep on a misperception of her testimony. An effective final argument for the defense might have provided insights that would have obviated the errors.

A structural error is one that renders the adversarial process unreliable. *Cronic*, 466 U.S. at 658–59, 104 S.Ct. at 2046–47. Such error can occur when defense counsel fails to subject the prosecutor's case to meaningful adversarial testing. *Id.* Considering the facts of this case, we hold that defense counsel's failure to provide the court with a final argument on Dalbec's behalf was a structural error. Because a structural error calls into serious question the accuracy and reliability of the trial process, automatic reversal is required. *Dorsey*, 701 N.W.2d at 253.

Our decision should not be taken to suggest that counsel may never waive final argument, or any other aspect of a trial, for strategic reasons. Nor should it be read to mean that it is structural error per se for a lawyer to omit, waive, or decline to explore some arguably critical aspect of a trial. The de facto waiver that occurred

here, however, was a simple default without the client's knowledge or consent and worked to deprive the client of legal representation at a critical stage of the trial. And we have focused on the particular facts of this case not to limit our holding to those facts but to provide a context for determining whether defense counsel's omission reasonably fell within the category of structural error rather than trial error. We have made no dispositive assessment of prejudice—as would be necessary if only trial error were involved—but rather we have considered the facts and their nature to ascertain whether defense counsel could have had a plausible strategic reason for failing to supply a final argument as part of his representation of Dalbec. In light of the manner in which the case was charged, at the very least the appearance of justice was compromised and the reliability of the trial process called into question.

In reaching our decision, we are not insensitive to the plight of the complaining witness who will be required to testify at a retrial. And we acknowledge the likely frustration of the trial judge at having to retry the case. Defense counsel's incomprehensible, blatant neglect of his client and his professional obligations caused the appeal and the result. As distasteful as it is to overturn the decision of the district court, to hold otherwise would be to treat final argument as a perfunctory appendage that rarely has any significant effect on the trier of fact. We are sure that competent lawyers will agree that final argument has the real potential to "carry the day." It is a procedure that many lawyers would characterize as the jewel in the crown of their case.

Finally, we do not intend by this result to limit the prosecutor to the original charge but rather all proper recharging options remain open.

## DECISION

Defense counsel's failure to "appear" for final argument by failing to submit a written summation, as agreed by the parties and approved by the judge, rendered counsel's assistance ineffective and constituted structural error under the particular facts of the case.

**Reversed and remanded.**