STATE of Minnesota, Appellant,

v.

Daniel Brian DALBEC, Respondent.

No. A09–0568.

Supreme Court of Minnesota.

July 27, 2011.

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, MN, Tom N. Kelly, Wright County Attorney, Buffalo, MN, for appellant.

Daniel J. Supalla, Briggs and Morgan, P.A., Minneapolis, MN, for respondent.

## OPINION

PAGE, Justice.

Respondent Daniel Brian Dalbec was charged with third-degree criminal sexual conduct in violation of Minn.Stat. § 609.344, subd. 1(d) (2010). At Dalbec's bench trial, counsel for the State and Dalbec agreed to submit written closing arguments to the trial court. For reasons not explained in the record, defense counsel failed to submit a closing argument. The trial court subsequently found Dalbec guilty of third-degree criminal sexual conduct as charged. On appeal to the court of appeals, Dalbec argued, among other things, that he was entitled to a new trial based on structural error that allegedly occurred when the trial court adjudicated his guilt without having received a closing argument from his counsel. The court of appeals agreed and granted Dalbec a new trial. We granted the State's petition for review and, for the reasons discussed below, reverse the court of appeals and remand for consideration of Dalbec's remaining claims.

The material facts in this case are not in dispute. According to S.J., the victim, she awoke at 5:00 a.m. the morning of July 1, 2006, and had very little to eat throughout the day. She later attended a party at Dalbec's house, where he lived with a friend of S.J.'s brother. S.J. consumed between six and eight alcoholic beverages throughout the evening, but had stopped drinking by 10:30 p.m. S.J. fell asleep on a couch sometime after midnight. She awoke sometime later in Dalbec's bed with a cramp-like pain in her vaginal area, her bra pulled up, and her underwear around her knees. Dalbec, without pants or underwear, was also in the bed. There was testimony that one witness saw S.J. and

Dalbec talking, heard Dalbec offer his bed for S.J. to sleep in, and heard Dalbec say he would sleep on the floor. Neither S.J. nor Dalbec remember this conversation. After waking up in Dalbec's bed, S.J. immediately left the room and told a number of people that she thought Dalbec had raped her. Later that day, she went to the hospital for a sexual assault exam and also informed the police about the incident. At the hospital, semen subsequently determined to have come from Dalbec was found in S.J.'s vaginal canal.

After a two-day bench trial, the trial court asked the attorneys how they would like to proceed with closing argument. Defense counsel suggested written closing arguments. Counsel for the State agreed, and a two-week deadline was set. Defense counsel, however, never submitted a closing argument before the deadline expired, nor did he tell the court that he was waiving closing argument. A court clerk called defense counsel to inquire about whether a closing argument would be forthcoming. Counsel's response, if any, is not clear from the record, but counsel never did submit a closing argument. The court ultimately found Dalbec guilty of third-degree criminal sexual conduct.

Dalbec appealed his conviction, alleging five errors entitling him to either a new trial or a reversal of his conviction. One of the alleged errors was that the trial court committed structural error when it found Dalbec guilty without having received a closing argument from defense counsel. Addressing this issue first, the court of appeals agreed with Dalbec that structural error had occurred, reversed the conviction, and remanded the case to the trial court for a new trial. *State v. Dalbec*, 781 N.W.2d 430, 437 (Minn.App.2010). Because it reversed Dalbec's conviction based on the structural error, the court of ap-

peals did not address the other issues Dalbec submitted on appeal.

The question before us in this appeal is whether defense counsel's failure to submit a written closing argument constitutes a structural error, requiring automatic reversal and a new trial. Dalbec maintains that he was denied his constitutional right to counsel at a critical stage of trial when the court found him guilty without a closing argument having been presented on his behalf. The State argues that Dalbec's claim is actually a claim of ineffective assistance of counsel involving a trial error.

■ There is a fundamental difference between structural error and trial error. Structural error consists of "defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards" because "[t]he entire conduct of the trial from beginning to end is obviously affected." *Arizona v. Fulminante*, 499 U.S. 279, 309–10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). In other words, structural error "affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself" and calls into question the reliability and fairness of the trial. *Id.* at 310, 111 S.Ct. 1246; *see also State v. Brown*, 732 N.W.2d 625, 630 (Minn.2007). Structural error represents "a very limited class" of errors, *Johnson v. United States*, 520 U.S. 461, 468, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), which requires automatic reversal. The Supreme Court has articulated several justifications for the automatic reversal requirement, including (1) fundamental unfairness, (2) difficulty in assessing the prejudice due to the nature of the error (e.g., denial of the right to a public trial), and (3) irrelevance of harmlessness (e.g., denial of the right of self-representation). *United States v. Gonzalez–Lopez*, 548 U.S. 140, 149 n. 4, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). Conversely,

"trial error" is "error which occurred during the presentation of the case ... and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Fulminante*, 499 U.S. at 307–08, 111 S.Ct. 1246.

■ Ineffective-assistance-of-counsel claims are generally analyzed as trial errors under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*, a party claiming ineffective assistance of counsel must prove both deficient performance and prejudice. *See State v. Rhodes*, 657 N.W.2d 823, 842 (Minn.2003). Certain counsel-related errors, however, may be structural errors, which do not require a showing of prejudice. The justification for presuming prejudice in these types of cases is that the situation presents "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *United States v. Cronic*, 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). In *Cronic*, the U.S. Supreme Court outlined three categories in which counsel-related errors would be considered structural error: (1) when "the accused is denied counsel at a critical stage of his trial," (2) when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," and (3) when circumstances show that the probability that a fully competent lawyer "could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Id.* at 659–60, 104 S.Ct. 2039.

■ These three categories represent "a narrow exception to *Strickland*'s holding that a defendant who asserts ineffective assistance of counsel must demonstrate not only that his attorney's performance was deficient, but also that

the deficiency prejudiced the defense." *Florida v. Nixon*, 543 U.S. 175, 190, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004). Because it is presumed "that the lawyer is competent to provide the guiding hand that the defendant needs, the burden rests on the accused to demonstrate a constitutional violation." *Cronic*, 466 U.S. at 658, 104 S.Ct. 2039 (citation omitted). Therefore, the burden is on Dalbec to show that the facts of this case warrant inclusion in the "narrow exception" to *Strickland.*

■ Dalbec's argument is a blend of two arguments. First, he argues that he was denied the effective assistance of counsel when his trial counsel failed to submit a written closing argument, a critical stage of trial, resulting in structural error. He then contends that the error was exacerbated when the trial court adjudicated him guilty without having the benefit of a closing argument from defense counsel. We find these arguments unpersuasive.

In *Bell v. Cone*, 535 U.S. 685, 696–97, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002), the Supreme Court rejected the defendant's argument that his ineffective-assistance-of-counsel claim involving, among other things, the waiver of closing argument, should be evaluated under the second exception set forth in *Cronic*. In doing so, the Court explained that the exception—that defense counsel fails to subject the State's case to meaningful adversarial testing—must involve a "complete" failure by counsel and does not apply to counsel's failure to oppose the State's case "at specific points" in the proceeding. *Cone*, 535 U.S. at 697, 122 S.Ct. 1843.

We see no meaningful distinction to be made between what happened here and situations like the one in *Cone* in which defense counsel is alleged to have improperly waived closing argument. In *Cone*, the Court said that such waivers are "plainly of the same ilk as other specific attorney errors we have held subject to *Strickland*'s performance and prejudice components," and therefore do not involve structural error. *Cone*, 535 U.S. at 697–98, 122 S.Ct. 1843. Although we recognize that there is no evidence in this record suggesting that defense counsel waived closing argument, we can find no reason to approach this case any differently than if he had done so.

Moreover, on the facts presented here, defense counsel's failure to submit a written closing argument does not implicate the justification for the rule announced in *Cronic*—"circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." 466 U.S. at 658, 104 S.Ct. 2039. The likelihood of prejudice to the defendant when defense counsel fails, as here, to submit a written closing argument is no different than the likelihood of prejudice to the defendant in situations involving defense counsel's improper waiver of closing argument on the record. In both instances, the omission, if error, results in the trier of fact not having a closing argument from the defendant at the time the decision as to the defendant's guilt is made. For us to presume prejudice on the facts presented here, while not to presume prejudice in cases with facts similar to those in *Cone*, would be inconsistent, illogical, and contrary to structural error jurisprudence. Therefore, we conclude that defense counsel's failure to submit a closing argument did not result in structural error.

■ For his argument that the trial court exacerbated defense counsel's error, Dalbec relies on *Herring v. New York*, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975), to support his claim that it was structural error for the trial court to adjudicate him guilty without having had the

benefit of a written closing argument from defense counsel. In *Herring*, the trial court refused to hear closing argument from either party, despite a request from the defendant's attorney. *Id.* at 856, 95 S.Ct. 2550. In *Herring*, unlike here, saying "I choose not to hear summations," the court, by its own actions, denied the defendant the assistance of counsel. *Id.* In this case, unlike in *Herring*, there is nothing to suggest that the trial court did anything to prevent or otherwise deny Dalbec the assistance of counsel. Given that distinction, *Herring* is not helpful.

More to the point, we do not view the trial court's actions as erroneous, structurally or otherwise. An attorney's improper waiver of closing argument, as in *Cone*, results in a trial court having to adjudicate the defendant's guilt without having had the benefit of a closing argument from defense counsel. Importantly, the Court did not hold that the adjudication of the defendant's guilt without the benefit of closing argument was error, much less structural error. *See Cone*, 535 U.S. at 698, 122 S.Ct. 1843. On the minimal facts presented here—the trial court granting both parties the opportunity to submit written closing arguments within an agreed-upon deadline and then adhering to that deadline—we see no reason to conclude that the trial court's adjudication of Dalbec's guilt without having the benefit of a closing argument was erroneous. There-

fore, Dalbec's structural error argument necessarily fails.

We reverse the court of appeals and remand this case to the court of appeals for consideration of the unaddressed claims Dalbec asserted on appeal to the court of appeals.[1]

Reversed and remanded.

---

1. The State asks that we rule on its claim that Dalbec cannot meet the *Strickland* test for ineffective assistance of counsel and that any assertions of ineffectiveness under *Strickland* would be barred in a postconviction proceeding under *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976). We decline to do so here because the claim is not ripe, as Dalbec has not raised an ineffective-assistance-of-counsel claim in this appeal and has not raised any such claim in a postconviction proceeding. *Cf. State v. Lindsey*, 632

N.W.2d 652, 665 (Minn.2001) (stating that defendant's claim that counsel's ineffectiveness deprived him of his right to appellate review of his conviction was not ripe because the defendant did not assert "that he has ever attempted to file a direct appeal"). Whether *Knaffla* bars an ineffectiveness claim under *Strickland* for counsel's failure to submit a written closing argument is best addressed by the postconviction court if at some point Dalbec files a petition for postconviction relief asserting such a claim.