Tsige Abebaw **DEREJE**, petitioner, Appellant,

v.

**STATE of Minnesota, Respondent.**

No. A11–1147.

Court of Appeals of Minnesota.

April 2, 2012.

---

David W. Merchant, Chief Appellate Public Defender, Benjamin J. Butler, Assistant Public Defender, St. Paul, MN, for appellant.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, MN, for respondent.

Considered and decided by KLAPHAKE, Presiding Judge; STONEBURNER, Judge; and CLEARY, Judge.

## OPINION

KLAPHAKE, Judge.

Appellant Tsige Abebaw Dereje challenges his conviction of fifth-degree criminal sexual conduct, arguing that his stipulated facts trial, held pursuant to Minn. R.Crim. P. 26.01, subd. 3, was not valid, and that his right to a fair trial was denied by the ineffective assistance of his trial counsel.

We conclude that appellant's trial on stipulated facts did not conform to the express language of the rule and therefore was not valid; but we further conclude that this error was harmless. But because we also conclude that appellant was denied the effective assistance of counsel, we reverse and remand for a new trial.

## FACTS

Appellant was charged with fourth- and fifth-degree criminal sexual conduct, following an incident that occurred on March 30, 2008. Appellant worked as a taxi-cab driver for Northstar Taxi. On the day in question, he noticed 19–year old S.J. standing at a bus shelter near a Cub Foods store in North Minneapolis. According to S.J., appellant pulled up and asked if she needed a ride; she had enough money and decided to take a cab instead of waiting for a bus. She said she needed to go to St. Paul. Appellant then told her that the ride would be free and he would pay her $150 to sleep with him. She rebuffed him and was frightened and

asked to get out of the taxi, but appellant locked the doors. The door handles and locks did not work in the passenger section of the taxi. S.J. asked to be let out of the taxi in downtown Minneapolis, but appellant refused and proceeded to drive to his home. At some point, appellant leaned back over the seat, and rubbed S.J.'s thigh and vaginal area over her clothes; he also kissed her hand and asked her to kiss him. S.J. refused. S.J. placed several calls to 911, but was afraid to reveal too much in her conversations because she did not know where she was. She also had difficulty with her phone because the battery fell out. Police later confirmed that S.J. made several calls to 911 from her phone; the recorded conversations include S.J. asking to be let out in downtown Minneapolis and asking where she was. Appellant pulled up next to an apartment building and told S.J. that he was going to get his personal car, a white van, and some money; he locked her inside the taxi. She managed to get the locked doors open and ran for help. A man assisted her with a call to 911, and she hid behind a house until police arrived. The police observed that S.J. was shaking and visibly frightened.

Upon their arrival, police observed a white minivan driving slowly up and down the street, as though looking for someone. Police stopped the van and identified appellant as the driver. They conducted a brief show-up with S.J., who identified appellant as her assailant. Police discovered a closed and an opened condom package in appellant's pockets.

Appellant denied S.J.'s story. He stated that his wife had asked him to get some groceries, so he stopped at Cub Foods. As he left with $100 of groceries, he was signaled by S.J., who asked him to drop her in downtown Minneapolis. Appellant said that she spent the entire ride on her phone; when he stopped to let her out, she asked him to drive to St. Paul. He tried to refuse because he wanted to take the groceries to his wife, but S.J. insisted. He agreed, but asked if he could stop by his house and drop off the groceries; he assured her that she would not have to pay for that portion of the ride. Appellant stopped at his house and while he was carrying groceries in, S.J. disappeared. He thought she was trying to avoid paying the fare. Appellant was driving his minivan, trying to locate S.J., when he was stopped by police. He claimed that the condoms found in his pockets were for his wife. Appellant denied having sexual contact with S.J. Appellant said that S.J. lied when she said her phone was not working because she talked during the entire ride on her phone.

Appellant was charged with fourth- and fifth-degree criminal sexual conduct. Appellant, who is not a native English speaker, was assisted at all stages of the hearings by an Amharic interpreter. He was later charged with witness-tampering because he contacted S.J. and asked her to withdraw the charges, threatening to commit suicide if she did not. During the course of the preliminary hearings, appellant's behavior became more and more erratic. The district court granted his counsel's motion for a rule 20 examination; appellant was found not competent for trial and was civilly committed for a short period of time. The criminal charges were reinstated in March 2009.

On March 12, 2009, appellant pleaded guilty to the witness-tampering charge, which is not part of this appeal; the district court stayed imposition of sentence. On the same date, appellant agreed to submit the police reports and the complaint to the court for a stipulated facts trial pursuant to Minn. R.Crim. P. 26.01, subd. 3, on the charge of fifth-degree crim-

inal sexual conduct. Appellant, with the help of an interpreter, agreed in writing to waive his rights to a jury trial, to testify, to compel witnesses to testify, and to confront the prosecution's witnesses. The documents submitted to the court include both S.J.'s and appellant's versions of the facts and appellant's denial of sexual contact. During this hearing, appellant did not enter a guilty plea.

On March 18, 2009, the district court issued its findings, conclusions, and order finding appellant guilty of fifth-degree criminal sexual conduct. The fourth-degree criminal sexual conduct charge was dismissed. The district court sentenced appellant to 360 days in jail, stayed for two years.[1]

In January 2011, appellant filed a petition for postconviction relief, alleging that the stipulated facts trial was not valid but was more like a guilty plea, that his counsel was ineffective, and that his written waiver of his right to trial was invalid because he had not been offered the services of an interpreter. Appellant did not request and did not receive a hearing. The district court denied his petition, and this appeal followed. Appellant has not contested his written waiver of a jury or court trial on appeal.

## ISSUES

1. Does Minn. R.Crim. P. 26.01, subd. 3, permit the parties to submit disputed facts to the district court for decision?

2. Was appellant deprived of his constitutional right to effective assistance of counsel when his trial counsel failed to challenge the disputed evidence?

3. Are appellant's pro se issues meritorious?

## ANALYSIS

 A petitioner has the burden of proving by a fair preponderance of the evidence that the facts alleged in a postconviction petition warrant relief. *Erickson v. State*, 725 N.W.2d 532, 535 (Minn. 2007). This court reviews the district court's postconviction decision for an abuse of discretion. *Francis v. State*, 781 N.W.2d 892, 896 (Minn.2010). In doing so, we consider whether there is sufficient evidence to support the postconviction court's findings and review the postconviction court's legal determinations de novo. *Schneider v. State*, 725 N.W.2d 516, 520 (Minn.2007). Both a district court's interpretation of the Minnesota Rules of Criminal Procedure and its conclusions regarding claims of ineffective assistance of counsel are legal determinations. *Id.; Ford v. State*, 690 N.W.2d 706, 712 (Minn. 2005). We strictly construe application of rule 26.01. *State v. Halseth*, 653 N.W.2d 782, 784 (Minn.App.2002).

### 1. Minn. R.Crim. P. 26.01, subd. 3 Stipulated Facts Trial

 Appellant and the prosecutor agreed to submit the question of appellant's guilt to the district court under Minn. R.Crim. P. 26.01, subd. 3, which permits the district court to make its decision based on stipulated facts. We look at the plain language of the rule: by agreement, the parties "may agree that a determination of defendant's guilt ... may be submitted to and tried by the court based on stipulated facts." *Id.*, subd. 3(a).

The state argues that, as applied, the rule permits the issue of guilt to be determined by submission of a body of evidence, from which the district court may extract and reconcile conflicting facts. But we

---

1. The sentence duration was important to appellant because he could be subject to deportation proceedings if the district court imposed a one-year sentence.

strictly construe rule 26.01, which sets forth the requirements that protect a defendant's constitutional rights to a trial. *See Halseth,* 653 N.W.2d at 784; *cf.* U.S. Const. amend. VI; Minn. Const. art. I, § 4. We will not read additional language into the rule. It is notable that in subdivision 4 of the same rule, under which a stipulated facts trial is held in order to challenge a pretrial ruling, a defendant must stipulate "to the prosecution's *evidence.*" Minn. R.Crim. P. 26.01, subd. 4 (emphasis added). As demonstrated by the different words chosen for each rule, the rule drafters understood that there is a difference between "stipulated facts" and "evidence."

Finally, we note that the word "stipulate" suggests agreement; "stipulate" means to "lay down as a condition of an agreement; [to] require by contract; ... to specify or arrange in an agreement ... to guarantee or promise (something) in an agreement." *The American Heritage Dictionary* 1767 (3rd ed.1992). "Stipulation" is defined as "[a] material condition or requirement in an agreement ... [a] voluntary agreement between opposing parties concerning some relevant point." *Black's Law Dictionary* 1550 (9th ed.2009). None of these concepts implies that parties, unable to reach an agreement, thrust a body of evidence on the district court to determine the truth of the facts. We conclude that as presented here, appellant was not afforded a valid stipulated facts trial under Minn. R.Crim. P. 26.01, subd. 3.

 This does not end our inquiry, however. We are not confronted with a situation where appellant was improperly denied his constitutional rights to a trial. Appellant is not contesting his waiver of his right to a jury trial or his rights to testify, confront and question prosecution witnesses, or compel witnesses to testify in his defense. There is nothing improper about a defendant's valid waiver of these rights. *State v. Kuhlmann,* 806 N.W.2d 844, 848 (Minn.2011). If we are dealing with structural error, error that "calls into question the reliability and fairness of the trial" and that makes it difficult to even assess the prejudice caused by the error, we must automatically reverse a defendant's conviction. *State v. Dalbec,* 800 N.W.2d 624, 627 (Minn.2011). But "trial error" is "error which occurred during the presentation of the case and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Id.* (quotation omitted). We conclude that the error here is in the nature of trial error, akin to the receipt of evidence that should properly have been excluded.

 When unobjected-to error of this nature occurs, we use a plain error analysis to determine if the error affected the defendant's substantial rights. *Kuhlmann,* 806 N.W.2d at 852. In a plain error analysis, we examine whether an error occurred, whether it was clear or obvious error, and whether a defendant's substantial rights were affected. *Id.* The language of rule 26.01, subdivision 3, is unambiguous: a stipulated facts trial must be held on stipulated facts, not on a body of disputed evidence. The error here was plain.

 In considering the next step, whether appellant's substantial rights were affected, we examine the range of stipulations permitted by law. A defendant may waive not only his right to a jury trial, but may also stipulate to certain evidence without requiring testimony or to elements of a crime without requiring additional proof. *See State v. Craig,* 807 N.W.2d 453, 467 (Minn.App.2011) (noting that defendant may stipulate to elements of a charge or to prior convictions); *State v. Edstrom,* 792

N.W.2d 105, 108 (Minn.App.2010) (acknowledging receipt of expert testimony by transcript in lieu of live testimony by stipulation); *State v. Roeschelein*, 776 N.W.2d 480, 482–83 (Minn.App.2009) (discussing use of a stipulation to limit facts presented at trial). We see nothing in the rule governing court trials that would forbid stipulation to a body of evidence, permitting a court trial to proceed without live witnesses and based only on documentary testimony. *See* Minn. R.Crim. P. 26.01, subd. 2. Viewed in this manner, although appellant may not have had a valid stipulated facts trial as described by rule 26.01, subdivision 3, we conclude that he was afforded a valid court trial, in which the evidence was received by stipulation. We therefore decline to reverse appellant's conviction on these grounds because his substantial rights were not affected by the erroneous use of the stipulated facts trial here.

### 2. Ineffective Assistance of Counsel

As an alternative basis for appeal, appellant argues that he was deprived of his constitutional right to effective assistance of counsel because the trial did not constitute an adversarial proceeding. Although generally claims of ineffective assistance of counsel are considered to be trial errors, in a limited number of circumstances counsel-related errors are considered to be structural errors. *Dalbec*, 800 N.W.2d at 627. One of these limited categories is when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id.* (quoting *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984)). This is a "narrow" exception and must involve a "complete failure by counsel and does not apply to counsel's failure to oppose the State's case at specific points in the proceeding." *Dalbec*, 800 N.W.2d at 628 (quotation omitted).

In *Dalbec*, counsel's failure to submit a written closing argument was not within this exception; the supreme court concluded that it was unlikely that the defendant was prejudiced to the extent that structural error occurred. *Id.* But in *Dalbec*, the defendant also received a two-day bench trial, during which trial counsel tested the state's evidence. *Id.* at 626. Here, there was a complete failure of meaningful adversarial testing: trial counsel made no attempt to draw the court's attention to the disputed factual evidence in a case that hinged on credibility. Under these limited facts, we conclude that counsel-related error of a structural nature occurred that requires reversal of appellant's conviction and remand for a new trial.[2]

### 3. Appellant's Pro Se Issues

Appellant's pro se brief is a recitation of the facts from his point of view. We decline to "consider pro se claims on appeal that are unsupported by either arguments or citations to legal authority." *State v. Bartylla*, 755 N.W.2d 8, 22 (Minn.2008).

### DECISION

A stipulated facts trial held pursuant to Minn. R.Crim. P. 26.01, subd. 3, must be based on facts agreed to by the parties, and not on a body of evidence including disputed facts. Although the district court erred by basing its decision on a stipulated body of evidence rather than stipulated facts, under the circumstances

---

2. While we do not base our decision on appellant's assertion that the resolution of this case was nothing more than a poorly handled guilty plea, we reiterate that a stipulated evidence trial in which a disposition and sentence is suggested before the matter is submitted, as in this case, has the appearance of a negotiated plea rather than a proper trial.

here the error was harmless because appellant's waiver of trial rights turned the proceeding into a court trial based on stipulated evidence. But because trial counsel entirely failed to subject the prosecution's case to meaningful adversarial testing, appellant was deprived of his right to effective assistance of counsel. This is structural error requiring reversal of appellant's conviction and remand for a new trial.

**Reversed and remanded.**