*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1469**

State of Minnesota,
Respondent,

vs.

Brandon Richard Blegen,
Appellant.

**Filed December 27, 2016
Affirmed
Larkin, Judge**

Hennepin County District Court
File No. 27-CR-14-15966

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Kelly O'Neill Moller, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Benjamin Butler, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Larkin, Presiding Judge; Hooten, Judge; and Smith, John, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant challenges the postconviction court's summary denial of his petition for relief, arguing that his trial attorney provided ineffective assistance of counsel by failing to subject the state's case to meaningful adversarial testing. Appellant raises additional issues in a supplemental pro se brief. We affirm.

**FACTS**

On May 4, 2014, appellant Brandon Richard Blegen assaulted P.T. at a bar in downtown Minneapolis. Blegen hit P.T. once in the face, either with a fist clutching a glass or bottle, or with the glass or bottle itself. The force of the blow caused P.T. to lose consciousness. P.T. sustained two broken teeth, several facial fractures, a laceration, a black eye, and facial swelling. His injuries resulted in facial disfigurement that will be permanent without surgical correction.

In June 2014, respondent State of Minnesota charged Blegen with one count of second-degree assault and one count of third-degree assault. In March 2015, Blegen agreed, "[p]ursuant to Minn. R. Crim. P. 26.01, Subd. 3," to a "trial on stipulated facts as to guilt." Blegen signed a "waiver of rights before trial on stipulated facts as to guilt," acknowledging and waiving his rights to a trial by jury, to testify at trial, to have the prosecution witnesses testify in open court in his presence, to question prosecution witnesses, and to require any favorable witnesses to testify for the defense in court. Blegen's attorney reviewed the waiver form with Blegen on the record, and Blegen stated that he understood the rights he was waiving. Blegen's attorney asked Blegen, "You know

2

exactly what's happening today?" Blegen replied, "Correct." Blegen's attorney then explained the trial procedure to Blegen as follows:

> Essentially the Court is going to receive documentation regarding stipulated facts supplemented by police reports, as well as audio and video recordings, and the Court will review that and the Court will act as the jury, so to speak, and determine if you are guilty of any of the two offenses beyond a reasonable doubt.

Blegen's attorney asked him if he had any questions about the procedure. Blegen answered "[n]o, sir." The district court told Blegen that "we won't be having any witnesses, there won't be any questioning by the State or questioning by your attorney" and asked Blegen if he was "comfortable with that." Blegen replied "Yes."

The parties submitted a "four-page trial stipulation" that set forth stipulated facts. The parties also submitted audio statements from witnesses, police reports, and P.T.'s medical records. The district court reviewed the stipulated record and found Blegen guilty of both counts of assault, noting that it did "not find Mr. Blegen was acting in self-defense when he assaulted [P.T.]."

Between the district court's finding of guilt and Blegen's sentencing hearing, Blegen's supervised release on an unrelated offense was revoked because he twice tested positive for opiates. At Blegen's sentencing hearing, the state argued for a 54-month, "top of the box" prison sentence. Blegen's attorney asked the district court to "defer to probation's recommendation of 45 months" and to consider a sentence "somewhere between 39 to 45 months." The district court sentenced Blegen to a 45-month prison term for the second-degree assault, a presumptive sentence.

3

In September 2015, Blegen appealed his sentence to this court. In January 2016, Blegen moved to stay his appeal and remand to the district court for postconviction proceedings. This court granted Blegen's motion.

Blegen petitioned for postconviction relief, arguing that his trial attorney was ineffective because he "failed to subject the prosecution's case to meaningful adversarial testing" by "agreeing, and counseling [Blegen] to agree, to stipulate to a set of facts from which the only logical verdict would be one of guilty"; "failing to submit any evidence in [Blegen]'s defense, including, but not limited to, any evidence in support of [his] self-defense claim"; and "by failing to argue for a beneficial sentence."[1]

The postconviction court denied Blegen's petition without an evidentiary hearing. The postconviction court concluded that "Blegen's representation did not constitute a structural error" because "Blegen's case underwent meaningful adversarial testing." The postconviction court reasoned that the question of "what, if any, dangerous weapon Mr. Blegen used during the assault was a question of fact left for the Court." The postconviction court further reasoned that "Blegen had strategic reasons for agreeing to a stipulated facts trial, such as avoiding a more serious First-Degree Assault charge," Blegen's attorney clearly and reasonably informed Blegen of his jury trial rights before Blegen waived them, and given the lack of self-defense evidence, it was reasonable for Blegen's attorney not to raise a self-defense claim.

---

[1] On appeal, Blegen does not argue that his trial attorney failed to argue for a beneficial sentence.

4

The postconviction court also concluded that "Blegen's representation did not constitute ineffective assistance of counsel" because "[t]he stipulated facts trial was part of a negotiated plan, which Mr. Blegen consented to," the "only evidence supporting Mr. Blegen's self-defense claim was his version of events," and "Blegen's own actions limited the reasonable arguments [Blegen's attorney] could make on his behalf at sentencing."

This court granted Blegen's motion to dissolve the stay and reinstated his appeal.

## D E C I S I O N

### I.

A postconviction court may deny a postconviction petition without a hearing when "the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2014). This court reviews a summary denial of postconviction relief for an abuse of discretion. *State v. Hokanson*, 821 N.W.2d 340, 357 (Minn. 2012). In doing so, this court reviews the postconviction court's legal determinations de novo and its factual findings for clear error. *Bonga v. State*, 797 N.W.2d 712, 718 (Minn. 2011). "A postconviction court's conclusion that a defendant received ineffective assistance of counsel involves a mixed question of law and fact that is reviewed de novo." *Dereje v. State*, 837 N.W.2d 714, 721 (Minn. 2013).

"Ineffective-assistance-of-counsel claims are generally analyzed as trial errors under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984)." *Id.* To prevail under *Strickland*, a "defendant must show that counsel's representation fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for

5

counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694, 104 S. Ct. at 2064, 2068. When analyzing an ineffective-assistance-of-counsel claim under *Strickland*, counsel's performance is presumed to be reasonable. *State v. Vang*, 847 N.W.2d 248, 266 (Minn. 2014). Strategic decisions regarding what defenses and evidence to present at trial are generally beyond this court's review. *State v. Bobo*, 770 N.W.2d 129, 139 (Minn. 2009).

"Certain counsel-related errors, however, may be structural errors, which do not require a showing of prejudice." *State v. Dalbec*, 800 N.W.2d 624, 627 (Minn. 2011). "A structural error occurs when 'counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing' because in such a case 'there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable.'" *Dereje*, 837 N.W.2d at 722 (quoting *United States v. Cronic*, 466 U.S. 648, 659, 104 S. Ct. 2039, 2047 (1984)). This exception "must involve a complete failure by counsel and does not apply to counsel's failure to oppose the State's case at specific points in the proceeding." *Dalbec*, 800 N.W.2d at 628 (quotations omitted). The party claiming that a counsel-related error amounted to structural error has the burden of showing that the facts of the case warrant inclusion in that narrow exception to *Strickland*. *Dereje*, 837 N.W.2d at 722.

"Structural error consists of defects in the constitution of the trial mechanism, which defy analysis by harmless-error standards because the entire conduct of the trial from beginning to end is obviously affected." *Dalbec*, 800 N.W.2d at 627 (quotations omitted). As a result, structural error represents "a very limited class of errors," which requires

6

automatic reversal. *Id.* (quotation omitted). "Conversely, trial error is error which occurred during the presentation of the case and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Id.* (quotation omitted).

*Structural Error*

We first address Blegen's argument that his attorney "failed to subject the state's case to meaningful adversarial testing," resulting in structural error. Blegen assigns error to his attorney's failure to present his version of the events and make arguments on his behalf at the stipulated bench trial. Blegen argues that this court should not consider the apparent lack of prejudice resulting from these failures because structural error presumes prejudice. In essence, Blegen requests a per se rule that structural error results any time defense counsel does not present his client's version of the events and make arguments in support of his client at a stipulated bench trial.

Adoption of such a per se rule is inconsistent with the United States Supreme Court's discussion of structural error in *Cronic*. There, the Supreme Court explained that under some circumstances, "a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial" and cited *Powell v. Alabama*, 287 U.S. 45, 53 S. Ct. 55 (1932), as an example of such circumstances. *Cronic*, 466 U.S. at 660, 104 S. Ct. at 2047. In *Powell*, the trial court "'appointed all the members of the bar' for the limited 'purpose of arraigning the defendants'" six days before the defendants' trial for a capital offense. *Powell*, 287 U.S. at 56, 53 S. Ct. at 59. "Whether they would represent the defendants thereafter, if no counsel appeared in their behalf, was a matter of speculation only, or, as

7

the judge indicated, of mere anticipation on the part of the court." *Id.* And no counsel was "named or definitely designated to represent the defendants" in the case "until the very morning of the trial." *Id.*

> The defendants, young, ignorant, illiterate, surrounded by hostile sentiment, haled back and forth under guard of soldiers, charged with an atrocious crime regarded with especial horror in the community where they were to be tried, were thus put in peril of their lives within a few moments after counsel for the first time charged with any degree of responsibility began to represent them.

*Id.* at 57-58, 53 S. Ct. at 60.

The Supreme Court stated, "such designation of counsel as was attempted was either so indefinite or so close upon the trial as to amount to a denial of effective and substantial aid in that regard." *Id.* at 53, 53 S. Ct. at 58. The Court therefore did not examine counsel's actual performance at trial, "but instead concluded that under these circumstances the likelihood that counsel could have performed as an effective adversary was so remote as to have made the trial inherently unfair." *Cronic*, 466 U.S. at 660-61, 104 S. Ct. at 2048.

"*Powell* was thus a case in which the surrounding circumstances made it so unlikely that any lawyer could provide effective assistance that ineffectiveness was properly presumed without inquiry into actual performance at trial." *Id.* at 661, 104 S. Ct. at 2048. However, the Supreme Court also said that "every refusal to postpone a criminal trial will not give rise to such a presumption." *Id.* The Court cited *Chambers v. Maroney*, 399 U.S. 42, 90 S. Ct. 1975 (1970), noting that it had refused "to fashion a per se rule requiring reversal of every conviction following tardy appointment of counsel." *Id.* (quotation omitted). The Supreme Court explained that, "only when surrounding circumstances

8

justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial." *Id.* at 662, 104 S. Ct. at 2048.

Applying the reasoning of *Cronic*, which requires examination of the surrounding circumstances, we decline to adopt a per se rule that structural error results any time defense counsel does not present his client's version of the events and make arguments on behalf of his client at a stipulated bench trial. Whether such an approach justifies a presumption that defense counsel was constitutionally ineffective depends on the circumstances of the case. *See id*. When the circumstances show an obvious lack of prejudice, a finding of structural error is inappropriate. *See Dalbec*, 800 N.W.2d at 627.

The circumstances here are as follows. Although Blegen complains that his attorney did not present evidence to support a self-defense claim, he has never identified the self-defense evidence on which he would have relied. The only record evidence regarding Blegen's version of the events is his attorney's statement at sentencing that "[Blegen] has always contended that [P.T.] took a swing at him." A valid self-defense claim requires

> (1) the absence of aggression or provocation on the part of the defendant; (2) the defendant's actual and honest belief that he or she was in imminent danger of death or great bodily harm; (3) the existence of reasonable grounds for that belief; and (4) the absence of a reasonable possibility of retreat to avoid the danger.

*State v. Johnson*, 719 N.W.2d 619, 629 (Minn. 2006) (quotation omitted). Blegen's assertion that P.T. "took a swing at him" does not suggest a viable self-defense claim.

Even though counsel did not argue that Blegen acted in self-defense, the district court acknowledged that Blegen had filed notice of a self-defense claim before trial and

9

found that Blegen was not acting in self-defense when he struck P.T. Moreover, the district court's findings of fact recognize that the three witness accounts of the incident contained "minor differences in the details" and that only one witness actually saw and remembered the assault. The district court also recognized that "[t]he real issue in this case, is whether . . . Blegen assaulted [P.T.] with a 'dangerous weapon.'" *See* Minn. Stat. § 609.222, subd. 1 (2012) (providing that "[w]hoever assaults another with a dangerous weapon" commits second-degree assault). As to that issue, the district court determined that regardless of whether Blegen hit P.T. with his fist, a glass bottle, or a drinking glass, each constituted a dangerous weapon under the facts of this case.

In sum, Blegen has not identified favorable self-defense evidence that could have been presented on his behalf, the district court recognized the inconsistencies in the witnesses' statements, and the district court considered and rejected potential defenses such as self-defense and lack of a dangerous weapon. On this record, we cannot say that defense counsel's failure to present Blegen's version of the events or to offer arguments at the stipulated bench trial implicates the justification for the rule in *Cronic*: "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 658, 104 S. Ct. at 2046. Although defense counsel's minimalistic approach could raise questions regarding the adequacy of his legal representation, we do not discern a breakdown in the adversarial process that justifies a presumption of ineffective assistance of counsel without inquiry into counsel's actual performance. We therefore conclude that under the circumstances of this case, counsel's

10

failure to present Blegen's version of the events and make arguments on his behalf does not constitute structural error.

Strickland *Standard*

Having concluded that counsel's performance does not constitute structural error, we next analyze his performance under the traditional *Strickland* standard. Under *Strickland*, Blegen must first "show that counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688, 104 S. Ct. at 2064. Blegen argues that "[i]t was objectively unreasonable for [his attorney] to advise [him] to enter into a stipulated facts trial where the outcome of guilt was assured and to fail completely to advocate for [him] at trial." Blegen further argues that "a competent attorney would have either included evidence of [Blegen's] theory of self-defense in the stipulated evidence or would have advised [him] to proceed to a jury trial."

As to Blegen's argument that it was objectively unreasonable for his attorney to advise him to agree to a "stipulated facts trial where the outcome of guilt was assured," we question Blegen's assertion that his trial was a "stipulated facts trial." In *Dereje*, the supreme court held that a bench trial was not a valid stipulated-facts trial under Minn. R. Crim. P. 26.01, subd. 3, partly because the district court made findings of fact, which are "simply antithetical to the plain meaning of a trial on stipulated facts, and are more consistent with . . . a bench trial pursuant to Minn. R. Crim. P. 26.01, subd. 2." 837 N.W.2d at 721. Nonetheless, the supreme court concluded that Dereje's trial was not procedurally defective because "the trial here met the requirements for a bench trial in Minn. R. Crim. P. 26.01, subd. 2, Dereje validly waived his jury-trial rights, and the district court made

11

detailed and thorough findings of fact drawn from the stipulated evidence." *Id.* Although the parties in this case stipulated to some facts, they also stipulated that the district court would consider certain evidence at trial, and the district court made "findings of fact" based on that evidence, after Blegen waived his jury-trial rights. *Dereje* suggests that the bench trial here was not a stipulated-facts trial.

Regardless, we note that Blegen indicated during his presentence investigation (PSI) interview that he agreed to the stipulated bench trial because he was concerned that his charges would be amended to include first-degree assault. "Whoever assaults another and inflicts great bodily harm" commits first-degree assault. Minn. Stat. § 609.221, subd. 1 (2012). "Great bodily harm" includes bodily injury "which causes serious permanent disfigurement." Minn. Stat. § 609.02, subd. 8 (2012). The trial stipulation and medical records suggest that P.T. sustained great bodily harm. The assault caused "the entire left side of [P.T.'s] face" to be "caved in, as if he has no bone structure on that side." The resulting facial disfigurement will be permanent unless P.T. "undergoes extensive facial reconstructive surgery that poses serious risks, as it could lead to nerve damage in his face." To the extent that Blegen's attorney advised him to agree to a stipulated bench trial, we cannot say that his attorney's advice was objectively unreasonable given the possibility of a first-degree assault charge.

As to Blegen's argument that his attorney should have included evidence of his self-defense theory in the stipulations, decisions regarding what defenses and evidence to present are strategic and generally beyond review. *Bobo*, 770 N.W.2d at 138. Moreover, Blegen has not identified the purported self-defense evidence on which he relies. Blegen

12

did not describe the purported self-defense evidence in his postconviction court submissions, and he has not described it in this appeal. The only reference in the record to Blegen's self-defense evidence is found in a statement by his attorney at sentencing. Blegen's attorney stated:

> There has always been an issue as far as [Blegen's] concern as to the conduct of the soon ultimate victim, and I can tell you candidly that over the course of my many conversations with [Blegen] he has always contended that the guy took a swing at him. However, I've also indicated to [Blegen] that that did not rise to the level of a self-defense and he understands that.

As this statement shows, Blegen's attorney determined that Blegen's self-defense claim was without merit after discussing the claim with Blegen. The record does not establish that counsel's determination was objectively unreasonable. *See Johnson*, 719 N.W.2d at 629 (listing self-defense elements).

Under the second part of the *Strickland* standard, Blegen must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. 466 U.S. at 694, 104 S. Ct. at 2068. Once again, Blegen has not identified the evidence he would have presented to prevail on a self-defense claim. Instead, Blegen simply asserts that if he had testified and if his attorney had presented self-defense evidence, there is a reasonable likelihood that he would have been acquitted. Without a description of the purported self-defense we cannot determine that it is reasonably likely that the evidence would have produced an acquittal.

In sum, Blegen has not established ineffective assistance of counsel under *Strickland*.

13

*Denial of Relief Without an Evidentiary Hearing*

As an alternative to reversal, Blegen asks this court to remand for an evidentiary hearing on his postconviction petition. A postconviction court shall hold an evidentiary hearing "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1. "[A]n evidentiary hearing is not required unless facts are alleged which, if proved, would entitle a petitioner to the requested relief." *Matakis v. State*, 862 N.W.2d 33, 36 (Minn. 2015) (quotation omitted).

Allegations in a postconviction petition must be "more than argumentative assertions without factual support." *State v. Caldwell*, 803 N.W.2d 373, 388 (Minn. 2011) (quotation omitted). A generalized allegation of ineffective assistance of counsel in a postconviction petition does not warrant an evidentiary hearing. *See Fratzke v. State*, 450 N.W.2d 101, 102 (Minn. 1990) (stating that a petitioner's allegations that "trial counsel did not properly handle hearsay and inconsistent testimony and 'coached' the accomplice" were too generalized to warrant an evidentiary hearing).

Although Blegen's claim of ineffective assistance of counsel focuses on his attorney's failure to present evidence and arguments in support of a self-defense claim, Blegen's postconviction submissions did not identify the evidence supporting such a claim. His petition did not describe the evidence and he did not submit an affidavit in support of his petition. And although Blegen complains that his attorney should have tried his case to a jury, Blegen did not submit a postconviction affidavit asserting that his attorney did not adequately advise him regarding the stipulated bench trial to which he agreed. Indeed,

14

such an assertion would be inconsistent with the record, which reveals a knowing and intelligent waiver of Blegen's jury trial rights.

Because Blegen's postconviction allegations were argumentative assertions without factual support, the district court did not abuse its discretion by denying Blegen's postconviction petition without an evidentiary hearing.

## II.

In a supplemental pro se brief, Blegen contends that "the district court abuse[d] its discretion by not appointing counsel to assist [him] in his PSI whereby violating [his] Sixth Amendment right to counsel at a critical stage." He argues that the district court "failed to appoint/instruct counsel to advise and/or assist [him], and/or counsel failed to offer advice for said PSI meeting and as a result of said meeting, [he] revealed information that caused/increased his sentence."

Blegen's trial attorney continued to represent him at the time of his PSI interview and at the sentencing hearing. We therefore construe Blegen's pro se argument as an assertion that his attorney provided ineffective assistance during the PSI process, using the *Strickland* standard. Under *Strickland,* a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688, 694, 104 S. Ct. at 2064, 2068.

At the sentencing hearing, the state asked for a 54-month, "top of the box" prison sentence, partly based on Blegen's failure to accept responsibility for the assault. Blegen's

15

attorney asked the district court to "defer to probation's recommendation of 45 months" and to consider a sentence "somewhere between 39 to 45 months." The presumptive sentencing range for Blegen's second-degree-assault conviction was 39 to 54 months. *See* Minn. Sent. Guidelines 4.A (2012) (listing 39 to 54 months as the presumptive sentencing range for an offense with a severity level of six given a criminal-history score of four); *id.* at 5.A (2012) (listing second-degree assault as a severity level six offense).

The district court sentenced Blegen to a 45-month prison term for the second-degree assault, noting that Blegen hit P.T. with a single punch and stating that additional months in prison would be unnecessary. The district court did not indicate that the sentence was based on Blegen's statements during his PSI interview. Thus, it does not appear that those statements impacted Blegen's sentence. Under the circumstances, Blegen has not demonstrated prejudice stemming from his attorney's representation during the PSI, and his ineffective-assistance-of-counsel claim fails under the second part of the *Strickland* standard. *See Dereje*, 837 N.W.2d at 721-22 (stating that a court "need not address both the performance and prejudice prongs" of the *Strickland* test if one is determinative (quotation omitted)).

Blegen also argues that the district court abused its discretion by using his "agreement to a stipulated facts trial to erroneously determine facts constituting elements of the offense" rather than allowing a jury to decide those elements. Blegen relies on *State v. Wright,* a case in which this court held that a defendant's stipulation to an element of an offense must be supported by a personal oral or written waiver of the defendant's

right to a jury trial on that element. 679 N.W.2d 186, 191 (Minn. App. 2004), *review denied* (Minn. June 29, 2004).

*Wright* is readily distinguishable because Blegen did not stipulate to an element of an offense. Blegen agreed to a stipulated bench trial, instead of a jury trial, on all of the elements of the charged offenses. A defendant, with the approval of the district court, "may waive a jury trial on the issue of guilt provided the defendant does so personally, in writing or on the record in open court after being advised by the court of the right to trial by jury, and after having had an opportunity to consult with counsel." Minn. R. Crim. P. 26.01, subd. 1(2)(a). The record establishes that Blegen validly waived his right to a jury trial. The district court therefore did not err by determining facts constituting elements of the charged offenses.

*Conclusion*

In conclusion, Blegen failed to allege specific facts warranting an evidentiary hearing on his postconviction claim of ineffective assistance of counsel. In addition, Blegen has not met his burden to show that the facts of this case warrant application of the narrow structural-error exception to the *Strickland* standard, and he has not established that his attorney's representation was ineffective under *Strickland*. Lastly, Blegen's pro se arguments do not establish a basis for relief. We therefore hold that the postconviction court did not abuse its discretion by summarily denying Blegen's petition for relief.

**Affirmed.**